570 P.2d 1278

**The STATE of Arizona, Appellant,**

v.

**Michael Steven SHIRLEY, Appellee.**

**No. 2 CA–CR 1112.**

Court of Appeals of Arizona,
Division 2.

Aug. 22, 1977.

Rehearing Denied Sept. 28, 1977.

Review Denied Oct. 12, 1977.

Bruce E. Babbitt, Atty. Gen., Phoenix, James E. Don, Pinal County Atty. by W. Allen Stooks, Deputy County Atty., Florence, for appellant.

Stanfield, McCarville, Coxon, Cole & Fitzgibbons by A. Thomas Cole, Casa Grande, for appellee.

OPINION

RICHMOND, Judge.

This appeal raises the question of whether the exclusionary rule, invoked to suppress evidence of an illegal search, should be applied to a probation revocation hearing when the police officers who conducted the search were aware of the defendant's status as a probationer. We agree with the trial court that it should in this instance.

On April 28, 1975, appellee Michael Shirley pled guilty to the crime of second degree burglary. Imposition of sentence was suspended and appellee was placed on probation.

In the early morning hours of May 3, 1976, officers from the Federal Drug Enforcement Administration task force, Arizona Department of Public Safety, Pinal County Sheriff's Department and Casa Grande Police Department executed a nighttime search warrant and seized a quantity of marijuana, prescription-only drugs and a revolver. The officers were aware when they obtained the warrant that Shirley was on probation.

On May 18, the Pinal County Grand Jury returned an indictment against Shirley on charges of possession of marijuana for sale, possession of prescription-only drugs and possession of a pistol by a criminal. The charges were dropped later because the search warrant was found to be defective.

On May 20, a petition to revoke Shirley's probation was filed in Pinal County Superior Court. Shirley filed a motion to suppress, alleging that the search warrant and affidavit were defective and that all the evidence therefore was illegally obtained. Following a hearing, the court suppressed the evidence and denied the petition to revoke. Its written order stated:

"* * * The basis for the Court's ruling is that this evidence was obtained in violation of defendant-probationer's constitutional rights under the 4th Amendment of the U. S. Constitution: i. e., that the evidence was seized illegally in that the search warrant was defective."

The state contends that a probationer does not enjoy the same constitutional protections as other citizens. Relying on *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and *Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), it argues that revocation proceedings are not part of the criminal prosecution and thus "the full panoply of rights due a defendant in such a proceeding" does not apply.

*Morrissey v. Brewer*, supra, however, does not stand for the proposition that a probationer is without any constitutional protection. On the contrary, the majority in *Morrissey*, which involved parole revocation, points to the liberty which the parolee is enjoying and concludes that due process must be applied before that liberty may be revoked. *Morrissey* holds that ". . . due process is flexible and calls for such procedural protections as the particular situation demands." 408 U.S. at 481, 92 S.Ct. at 2600. Thus the only question under *Morrissey* is what procedural safeguards are demanded in this situation.

The state urges that application of the exclusionary rule to probation revocation would not serve the rule's primary purpose of deterring police officers from conducting illegal searches. *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); *State v. Price*, 27 Ariz.App. 673, 558 P.2d 701 (1976). Because we are concerned here with probation revocation and not with

conviction, the state concludes that the rationale of deterrence does not apply. While there may be valid reasons for this distinction, they depend on the degree of incentive provided by the use of the illegally seized evidence for unconstitutional searches and seizures.

The state relies on three cases in which courts have refused to apply the exclusionary rule to revocation hearings: *In re Martinez*, Sup., 1 Cal.3d 641, 83 Cal.Rptr. 382, 463 P.2d 734 (1970); *United States v. Winsett*, 518 F.2d 51 (9th Cir. 1975); *United States v. Vandemark*, 522 F.2d 1019 (9th Cir. 1975). In each of those cases, however, the officers conducting the search had no knowledge of the suspect's status as a probationer, and the state concedes there is an exception to the rule when the probationer's status is known because of the added incentive to conduct an illegal search.

In another case, *Verdugo v. United States*, 402 F.2d 599 (9th Cir. 1968), cert. denied, 397 U.S. 925, 90 S.Ct. 931, 25 L.Ed.2d 105 (1970), the court applied the exclusionary rule to a sentencing proceeding. It refused to sanction use of illegally obtained evidence because it found the requisite incentive for police misconduct where the defendant had been convicted of the sale, concealment and transportation of heroin and the range of possible penalty was wide, five to 20 years.

In *Winsett*, supra, the same court balanced the potential harm against the potential benefits of applying the exclusionary rule under the facts presented, and reasoned that extension of the rule to probation revocation proceedings would ". . . deter only police searches and arrests consciously directed toward probationers." 518 F.2d at 54. By footnote, the court explained:

"Compare *Verdugo v. United States*, [supra], in which this court applied the exclusionary rule to sentencing proceedings where the police were familiar with past narcotic violators and current suspects and had a personal stake in seeing not only that a violator was convicted, but also that he receive a lengthy sentence.

The court reasoned that in the absence of the exclusionary rule an officer would have an incentive, given the proper circumstances, to lawfully obtain only so much evidence as is necessary to assure conviction of the defendant of a single offense, and then proceed to unlawfully obtain evidence of additional offenses which would ensure a long sentence.

"Similarly, when the police at the moment of search know that a suspect is a probationer, they may have a significant incentive to carry out an illegal search even though knowing that evidence would be inadmissible in any criminal proceeding. The police have nothing to risk: If the motion to suppress in the criminal proceedings were denied, defendant would stand convicted of a new crime; and if the motion were granted, the defendant would still find himself behind bars due to revocation of probation. Thus, in such circumstances, extension of the exclusionary rule to the probation revocation proceeding may be necessary to effectuate Fourth Amendment safeguards." 518 F.2d at 54, n.5.

 The rationale of *Verdugo* is appropriate to the record before us. One of the officers who conducted the illegal search was an arresting officer on the burglary for which Shirley had been placed on probation, and testified at the revocation hearing that he "had hoped for something a little bit more" following the burglary conviction. The facts thus provide the potential incentive for misconduct that brings this case within the exception anticipated in *United States v. Winsett,* supra. The court properly suppressed the evidence and denied the petition to revoke probation.

Our holding is not inconsistent with our recent decision in *State v. Jeffers,* 116 Ariz. 192, 568 P.2d 1090 (App.1977). In *Jeffers,* we held that a condition of probation requiring a probationer to submit to warrantless searches of his person or premises was not a violation of the Fourth Amendment. We merely concluded that the conditions of probation were reasonably related to rehabilitation and to the protection of the public. We did not conclude that as a probationer Jeffers had no Fourth Amendment rights.

While a person is on probation his expectations of privacy are less than those of other citizens not so categorized. *State v. Montgomery,* 115 Ariz. 583, 566 P.2d 1329 (1977). He does not lose all Fourth Amendment protection.

Affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.