623 P.2d 8

STATE of Arizona, Appellee,

v.

Nicolas Magallon ALFARO, Appellant.

No. 5086–PR.

Supreme Court of Arizona,
En Banc.

Dec. 15, 1980.

Rehearing Denied Feb. 3, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Michael D. Jones, Asst. Attys. Gen., Phoenix, for appellee.

Richard S. Oseran, Pima County Public Defender by Frank P. Leto, Asst. Public Defender, Tucson, for appellant.

HAYS, Justice.

In 1976 appellant entered a guilty plea to charges of second degree rape. Imposition of sentence was suspended and appellant was placed on probation for five years. This action stems from the revocation of that probation. Appeal was taken to the Court of Appeals. *State v. Alfaro*, 2 CA–CR 1988–2 (memorandum decision, July 31, 1980). Granting the Petition for Review, we vacate the memorandum decision of the Court of Appeals and affirm the order revoking appellant's probation.

Acting upon an informant's tip, appellant became the subject of a burglary investigation by Tucson police. Prior to obtaining a search warrant for appellant's apartment and car, the police ran a routine records check which disclosed appellant's status as a probationer. The police discovered, upon serving the warrant, property recently reported stolen in appellant's car and under a bed in his apartment.

Prior to trial on charges of burglary, theft, and misconduct involving weapons, a petition to revoke appellant's probation was filed. At the probation revocation hearing, appellant sought to challenge the search warrant and evidence obtained thereby. The parties agreed the investigating officer knew appellant was on probation before obtaining the warrant, and pursuant to the directives of *State v. Shirley*, 117 Ariz. 105, 570 P.2d 1278 (App.1977), the trial judge made an ad hoc determination the search was conducted for the purposes of investigating a burglary. The trial judge ruled that even though the police knew of appellant's status as a probationer, the motive for the search was legitimate; therefore, no suppression hearing was necessary because the exclusionary rule was not applicable to appellant's case.

■ We are asked here to decide whether the exclusionary rule applies in probation revocation proceedings. We hold that it does not and anything to the contrary in *State v. Shirley, supra*, is disapproved.

■ To determine whether the exclusionary rule should apply in the probation revo-cation context we must balance the purpose and function of those proceedings with any potential benefits to be gained by application of the rule. *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613 (1974). Essentially, the function of a probation violation hearing is not to decide guilt or innocence but to determine, by a preponderance of all reliable evidence, whether a probationer has violated the terms and conditions of his probation. *State v. LeMatty*, 121 Ariz. 333, 590 P.2d 449 (1979); 17 A.R.S., Rules of Criminal Procedure, rule 27.7(b). The purpose of such proceedings is to ascertain whether continued probation is still an effective means of rehabilitation and in the best interest of society.

In *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756 (1973), the United States Supreme Court found the due process requirements of parole revocation proceedings, *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593 (1972), applicable to probation revocation hearings. Those due process requirements do not include the full range of evidentiary and procedural safeguards found in criminal prosecutions because "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissable in an adversary criminal trial." *Morrissey v. Brewer*, 408 U.S. at 489, 92 S.Ct. at 2604. The Supreme Court also observed that the full panoply of rights do not apply because "[r]evocation deprives an individual not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on the observance of special [probation] restrictions." 408 U.S. at 480, 92 S.Ct. at 2600.

■ Balanced against the purpose and functions of probation violation hearings is the potential benefit to be gained by the further extension of the exclusionary rule. Under the rule, evidence obtained by violating fourth amendment guarantees is not admissible in a criminal proceeding against the victim of the illegal search and seizure. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684 (1961); *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341 (1914). Deterrence of fu-

ture police misconduct through suppression of illegally obtained evidence is the rule's purpose:

> The rule is calculated to prevent not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it.

*Elkins v. United States*, 364 U.S 206, 217, 80 S.Ct. 1437, 1444 (1960).

"[T]he suppression of probative but tainted evidence exacts a costly toll upon the ability of the courts to ascertain the truth . . . ." *United States v. Payner*, 447 U.S. 727, 734, 100 S.Ct. 2439, 2445 (1980). We will pay the price where the purpose of deterrence is served but if application of the exclusionary rule does not effectuate deterrence then the exclusionary rule is being misapplied. It can not be said application of the exclusionary rule makes evidence more or less reliable nor can it be said the rule furthers the purposes of probation. Moreover, the Supreme Court has said: "Assuming that the exclusionary rule has a deterrent effect on proscribed police conduct, sufficient deterrence flows when the evidence is made inadmissable to the prosecution in its case in chief." *Harris v. New York*, 401 U.S. 222, 225, 91 S.Ct. 643, 645 (1971).

We think any additional benefit in double application of the exclusionary rule is outweighed by the harm done to the rehabilitative goal of probation. Rather than saying the police will have less incentive to obey the law, we think the probationer will have greater incentive to obey the terms of his probation if any reliable information will be available at a probation revocation hearing. We hold the exclusionary rule *does not apply* in probation violation hearings.[1]

■ Appellant also contends he was denied due process when the trial judge relied on the permissible inference of A.R.S. § 13–2305(1) to find that appellant committed theft, A.R.S. § 13–1802(A)(5), thereby violating the terms of his probation.

In *Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357 (1973), a criminal action for possessing United States Treasury checks stolen from the mails, knowing them to be stolen, the Supreme Court upheld a jury instruction allowing an inference from the unexplained possession of recently stolen mail that the defendant possessed the mail knowing it to be stolen. The Court said:

> if a statutory inference submitted to the jury as sufficient to support conviction satisfies the reasonable-doubt standard (that is, the evidence necessary to invoke the inference is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt) as well as the more-likely-than-not standard, then it clearly accords with due process. 412 U.S. at 843, 93 S.Ct. at 2361–62.

Since the court was dealing with a criminal prosecution it found the evidence necessary to invoke the inference must be established beyond a reasonable doubt. Due process in a probation revocation hearing is satisfied with proof by a preponderance of the evidence; therefore, we think the latter standard is applicable here. *See Gagnon v. Scarpelli, supra; Morrissey v. Brewer, supra.*

■ In order to invoke the inference that appellant was aware of the risk that the property was recently stolen, A.R.S. § 13–2305 requires: 1) unexplained possession of 2) recently stolen property. The uncontradicted evidence established that the property found in appellant's automobile and apartment was recently reported stolen. The record also discloses no evidence which might constitute an explanation of appellant's possession of the property. *See Tot v. United States*, 319 U.S. 463, 63 S.Ct. 1241 (1943). We think the evidence giving rise to the statutory inference was established by a preponderance of the evidence and

---

1. For a collection of the numerous other jurisdictions in accord with our decision, *see United States v. Frederickson*, 581 F.2d 711 (8th Cir. 1978). *See also United States ex rel. Sperling v. Fitzpatrick*, 426 F.2d 1161 (2d Cir. 1970) (excellent discussion of the underlying policy considerations).

that the inference was properly drawn to support revocation of appellant's probation.[2]

The order revoking appellant's probation is affirmed.

STRUCKMEYER, C. J., and CAMERON, J., concur.

HOLOHAN, Vice Chief Justice (dissenting):

The reasons advanced by the majority for not applying the exclusionary rule to probation revocation proceedings are not persuasive to me. The long line of federal cases holding as inadmissible evidence obtained by illegal search compels the conclusion that this court's balancing of benefits test cannot be sustained.

The rehabilitative goal of probation is no greater reason for admission of illegally obtained evidence than the other great concerns involved in any criminal prosecution. The United States Supreme Court has ruled illegally seized evidence is inadmissible. Until that court changes its position we are bound by the principles set forth in their decisions.

I believe that *State v. Shirley*, 117 Ariz. 105, 570 P.2d 1278 (App.1977) is correct in its holding that the exclusionary rule is applicable to probation revocation proceedings. I would reverse the order of the trial court revoking appellant's probation.

GORDON, Justice (dissenting):

I concur in the dissent of Vice Chief Justice HOLOHAN.

---

**2.** *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450 (1979), cited by appellant, is inapplicable as it deals with conclusive presumptions rather than permissive inferences.