THE STATE OF OHIO, APPELLANT, *v.* BURKHOLDER, APPELLEE.

[Cite as State *v.* Burkholder (1984), 12 Ohio St. 3d 205.]

(No. 83-1959—Decided July 25, 1984.)

*Mr. Lee C. Falke,* prosecuting attorney, and *Ms. Sharon L. Ovington,* for appellant.

*Mr. Kurt R. Portmann, Mr. Ellis Jacobs* and *Mr. David P. Williamson,* for appellee.

SWEENEY, J. The critical issue posed by this appeal is one of first impression before this court, and involves important constitutional considerations. We must decide whether evidence obtained in an unreasonable or unlawful search and seizure, while inadmissible in a trial, is nevertheless admissible in a subsequent probation revocation proceeding. Stated differently, we must determine whether the exclusionary rule is applicable in a probation revocation proceeding.

The appellant contends, *inter alia,* that the exclusionary rule should not apply to probation revocation proceedings, because the rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect on unlawful police activities rather than a personal constitutional right of the accused person. The state further submits that Evid. R. 101(C)(3) provides that courts are not bound by the Rules of Evidence in a probation revocation hearing, and that similarly, the exclusionary rule should not be included as one of the minimum requirements a probationer is entitled to in a probation revocation proceeding.

We disagree, and hold that pursuant to Section 14, Article I of the Ohio Constitution, evidence obtained through an unreasonable or unlawful search and seizure is inadmissible in a probation revocation proceeding.

Section 14, Article I of the Ohio Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized."

The constitutional guarantee of this provision applies equally to all persons and is not limited in any manner whatsoever. While the procedural due process requirements in a probation revocation proceeding are not as extensive as those found in a criminal trial, the substantive constitutional right against unreasonable searches and seizures embodied in the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution, must also apply to a probation revocation proceeding.

It has been often stated that the primary purpose of the exclusionary rule is to deter future unlawful police conduct in order to effectuate the Fourth

Amendment guarantee against unreasonable searches and seizures. *Elkins* v. *United States* (1960), 364 U.S. 206, 217; *Mapp* v. *Ohio* (1961), 367 U.S. 643, 656 [16 O.O.2d 384]; *Tehan* v. *Shott* (1966), 382 U.S. 406, 416 [35 O.O.2d 391]; *Terry* v. *Ohio* (1968), 392 U.S. 1, 29 [44 O.O.2d 383]; *United States* v. *Calandra* (1974), 414 U.S. 338, 347 [66 O.O.2d 320]; *State* v. *Williams* (1983), 6 Ohio St. 3d 281, 284.

In *Elkins, supra,* at 217, the court stated that the purpose of the exclusionary rule "* * * is to deter — to compel respect for the constitutional guaranty in the only effectively available way — by removing the incentive to disregard it." We believe that the application of the exclusionary rule to probation revocation proceedings furthers the universally accepted purpose to deter police misconduct by removing the incentive to disregard it.

To say, as does the state, that the purpose of the exclusionary rule was fulfilled when the illegally confiscated evidence was suppressed at trial and that this purpose is not furthered by applying the rule to probation revocation proceedings is in our view myopic. While a probationer stands as a convicted criminal and is deserving of close scrutiny, the mechanisms necessary to keep the probationer in check are already in place without the need to resort to cutting back the constitutional guarantees that the exclusionary rule is designed to protect. As the appellee submits, investigations of probation violations and new criminal charges very often involve the police and probation officers working together. Police officers know the possible results of a probation revocation, and that a revocation can have more serious consequences than new charges. The police have ready access to criminal records, and they know of the high probability that any suspect in a new crime may also be a probationer or parolee.

While we encourage the zealous enforcement of the law by our police officers, we must acknowledge that the potential for abuse is present, and that this potential for abuse must be deterred in order to maintain the constitutional guarantees that underlie the exclusionary rule. As the court of appeals below so aptly noted: "To excuse what admittedly was determined to be an illegal search is to deny the constitutional effect as well as the constitutional purpose of the suppression rule."

Our holding in the case *sub judice* is consistent with our decision in *State* v. *Gallagher* (1976), 46 Ohio St. 2d 225 [75 O.O.2d 280], in that a probationer, like the parolee in *Gallagher,* must be afforded the right to assert his or her constitutional privileges. Furthermore, our decision here is in accord with the cogent analysis of other courts that have already adopted this interpretation. *State* v. *McMilliam* (1956), 243 N.C. 775, 92 S.E. 2d 205; *Cooper* v. *State* (1968), 118 Ga. App. 57, 162 S.E. 2d 753; *Amiss* v. *State* (1975), 135 Ga. App. 784, 219 S.E. 2d 28; *Giles* v. *State* (1979), 149 Ga. App. 263, 254 S.E. 2d 154; *Adams* v. *State* (1980), 153 Ga. App. 41, 264 S.E. 2d 532; *Michaud* v. *State* (Okla. Crim. App. 1973), 505 P. 2d 1399; *Rushing* v. *State* (Tex. Crim. App. 1973), 500 S.W. 2d 667; *Moore* v. *State* (Tex. Crim. App. 1978), 562 S.W. 2d 484; *State* v. *Shirley* (1977), 117 Ariz. 105, 570 P. 2d 1278; *Ray* v. *State* (Fla. App. 1980), 387 So. 2d 995; see, also, Annotation (1977), 77 A.L.R. 3d 636.

As Justice Brandeis noted in his dissenting opinion in *Olmstead* v. *United States* (1928), 277 U.S. 438, at 485:

"* * * In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously. Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. * * *"

Based on all the foregoing, we affirm the judgment of the court of appeals in reversing and remanding the judgment of the trial court.

*Judgment affirmed.*

CELEBREZZE, C.J., W. BROWN, C. BROWN and J. P. CELEBREZZE, JJ., concur.

LOCHER and HOLMES, JJ., dissent.

HOLMES, J., dissenting. While the defendant is entitled to certain procedural due process rights at a probation revocation hearing, in my view he is not entitled to the benefits of the exclusionary rule. Therefore, I dissent.

The revocation of probation is not recognized as a part of a criminal prosecution. Thus, the alleged violator is not entitled to all of the constitutional guarantees available to one who stands charged with a criminal offense. *Gagnon* v. *Scarpelli* (1973), 411 U.S. 778 [71 O.O.2d 279]; *Morrissey* v. *Brewer* (1972), 408 U.S. 471. Based on this premise, the vast majority of reported cases have held the Fourth Amendment exclusionary rule inapplicable to probation revocation proceedings. See *Sperling* v. *Fitzpatrick* (C.A.2, 1970), 426 F. 2d 1161 (parole revocation); *United States* v. *Johnson* (C.A.5, 1972), 455 F. 2d 932, certiorari denied (1972), 409 U.S. 856; *United States* v. *Wiygul* (C.A.5, 1978), 578 F. 2d 577; *United States* v. *Brown* (C.A.5, 1973), 488 F. 2d 94 (alternative holding); *United States* v. *Farmer* (C.A.6, 1975), 512 F. 2d 160, certiorari denied (1975), 423 U.S. 987; *United States* v. *Hill* (C.A.7, 1971), 447 F. 2d 817; *United States* v. *Frederickson* (C.A.8, 1978), 581 F. 2d 711; *United States* v. *Vandemark* (C.A.9, 1975), 522 F. 2d 1019; *United States* v. *Winsett* (C.A.9, 1975), 518 F. 2d 51; *Connelly* v. *Parkinson* (D.S.D. 1975), 405 F. Supp. 811 (alternative holding); *United States* v. *Delago* (S.D.N.Y. 1974), 397 F. Supp. 708; *United States* v. *Rushlow* (S.D.Cal. 1974), 385 F. Supp. 795, affirmed (C.A.9, 1976), 541 F. 2d 287, certiorari denied (1976), 429 U.S. 984; *United States* v. *Allen* (N.D.Cal. 1972), 349 F. Supp. 749; *United States, ex rel. Lombardino,* v. *Heyd* (E.D.La. 1970), 318 F. Supp. 648, affirmed (C.A.5, 1971), 438 F. 2d 1027, certiorari denied (1971), 404 U.S. 880; *State* v. *Sears* (Alaska 1976), 553 P. 2d 907; *State* v. *Alfaro* (1980), 127 Ariz. 578, 623 P. 2d 8; *Harris* v. *State* (Ark. App. 1980), 606 S.W. 2d 93; *People* v. *Coleman* (1975), 13 Cal. 3d 867, 533 P. 2d 1024;

*People* v. *Ressin* (Colo. 1980), 620 P. 2d 717; *People* v. *Wilkerson* (Colo. 1975), 541 P. 2d 896; *People* v. *Atencio* (1974), 186 Colo. 76, 525 P. 2d 461; *Bernhardt* v. *State* (Fla. 1974), 288 So. 2d 490; *Brill* v. *State* (1947), 159 Fla. 682, 32 So. 2d 607; *People* v. *Dowery* (1974), 20 Ill. App. 3d 738, 312 N.E. 2d 682, affirmed (1975), 62 Ill. 2d 200, 340 N.E. 2d 529; *People* v. *Swanks* (1975), 34 Ill. App. 3d 794, 339 N.E. 2d 469; *Dulin* v. *State* (Ind. App. 1976), 346 N.E. 2d 746; *State* v. *Davis* (La. 1979), 375 So. 2d 69; *State* v. *Caron* (Me. 1975), 334 A. 2d 495; *State* v. *Thorsness* (1974), 165 Mont. 321, 528 P. 2d 692; *State* v. *White* (1965), 264 N.C. 600, 142 S.E. 2d 153; *Lemire* v. *Bouchard* (1973), 113 N.H. 174, 304 A. 2d 647; *State* v. *Ray* (Ore. App. 1979), 598 P. 2d 1293; *Commonwealth* v. *Davis* (1975), 234 Pa. Super. 31, 336 A. 2d 616; *State* v. *Spratt* (R.I. 1978), 386 A. 2d 1094; *State* v. *Knowles* (1970), 25 Utah 2d 13, 474 P. 2d 727; *State* v. *Kuhn* (1972), 7 Wash. App. 190, 499 P. 2d 49, affirmed (1972), 81 Wash. 2d 648, 503 P. 2d 1061.

The majority herein fails to recognize the nature of a probation revocation hearing. The important question is whether the probationer is satisfactorily pursuing his rehabilitation and, if not, what appropriate action should be taken by the judicial officer. The revocation process should be flexible to allow a court to consider evidence that would not be admissible in an adversary criminal proceeding. This is the exact reason why the court is not bound by the Rules of Evidence in a probation revocation proceeding. In other words, the trial judge should be given discretion to review all of the evidence in order to determine if the individual violated the terms of his probation. This standard, which is utilized by most jurisdictions, acts to better serve the judiciary and society as the trial judge can make a "true" evaluation of the probationer's actions.

I agree with the majority that the exclusionary rule was invoked primarily to deter police from making unreasonable searches and seizures. However, assuming that the exclusionary rule has a deterrent effect on the proscribed police conduct, I believe sufficient deterrence flows when the evidence is made unavailable to the prosecution in its case in chief. This is never more apparent than in the present case. As a result of the search of appellee's home, one hundred and eighty-three pieces of stolen property were recovered. This property came from at least seven different burglaries. Appellee was subsequently indicted on seven counts of receiving stolen property. However, the trial court dismissed the case on the basis of an improper search warrant. I fail to see where any additional deterrent effect will be gained by invoking the exclusionary rule to a proceeding after a dismissal of all criminal charges.

Finally, I note that appellee was afforded all of the due process guarantees as required by *Gagnon, supra,* and *Morrissey, supra.* Therefore, the trial judge acted lawfully in revoking appellee's probation. Accordingly, I would reverse the judgment of the court of appeals which rules that the trial court committed error in this matter.

LOCHER, J., concurs in the foregoing dissenting opinion.