STATE of Utah, Plaintiff and Appellee,

v.

Early Gilbert HODGES, Jr.,
Defendant and Appellant.

No. 890086–CA.

Court of Appeals of Utah.

Aug. 31, 1990.

Karen Stam, Joan C. Watt (argued), Salt
Lake Legal Defender Ass'n, Salt Lake City,
for defendant and appellant.

R. Paul Van Dam, Atty. Gen., Judith S.H. Atherton (argued), Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before DAVIDSON, BILLINGS and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

Appellant Early Gilbert Hodges, Jr. appeals the revocation of his probation and imposition of imprisonment for attempted sexual abuse of a child. We reverse and remand for a new hearing.

## FACTS

On November 16, 1987, appellant pled guilty to the charge of attempted sexual abuse of a child, a third degree felony, in violation of Utah Code Ann. § 76–5–404.1 (1990).

On December 14, 1987, a sentencing hearing was held. The trial court reviewed a presentence report and victim impact statement prepared for the hearing. The court was informed by the Adult Probation and Parole (AP & P) officer who had prepared the presentence report that appellant had been screened by and accepted for treatment in the sex offender program at the Bonneville Community Correctional Center. The AP & P representative described the Bonneville program as a safe inpatient facility operated by the Department of Corrections. She further described the program as providing close patient monitoring and sophisticated treatment specifically designed to deal with offenders like appellant. The duration of treatment was said to usually be fifteen months, with some patients staying as long as two years.

Pursuant to the presentence report, the description of the Bonneville program by the AP & P representative, and the agreement of counsel for appellant and the state, the trial court imposed a sentence of zero to five years in the Utah State Prison.

This sentence was stayed and appellant was placed on eighteen months probation subject to certain conditions. Chief among these conditions was the requirement that appellant enter, participate in, and successfully complete the Bonneville program. Addressing appellant directly, the trial court warned him that strict compliance with the Bonneville program would be required to maintain his probation. Appellant responded that he understood and agreed to this requirement.

Appellant entered the Bonneville program in January, 1988. After only eight months at Bonneville, the staff concluded that appellant was not making sufficient progress in his treatment. An order to show cause why appellant's probation should not be revoked or modified was issued in September, 1988. The order to show cause was based upon the state's allegation that appellant had failed to enter, participate in, and complete the Bonneville program.[1]

Appellant was transferred to the Salt Lake County Jail and then to the Utah State Hospital to evaluate him for possible acceptance into its sex offenders program. He was rejected by the State Hospital after sixty days of evaluation and was returned to Salt Lake City for an order to show cause hearing on the issue of whether probation should be revoked or modified.

The hearing was held before the trial court on January 13, 1989. Two psychologists from the Bonneville program, Dr. Rosalita Cespedes and Dr. Stephen Kramer, testified for the state. Both had been involved in appellant's treatment. They acknowledged that appellant had entered and participated in the program, which included weekly individual and group therapy as well as "sex modification therapy" designed to change appellant's sexual arousal patterns. These therapies also included various "homework" assignments to be completed by appellant between actual therapy sessions. Dr. Cespedes described the total program duration to average eigh-

---

1. While the state's affidavit alleged only that appellant had failed to enter and complete the Bonneville program, the parties stipulated that the actual alleged violation was a failure to enter, participate in, and complete the program.

teen months, with a two year maximum; the shortest time to completion was one year.

The psychologists testified that appellant had difficulty with the treatment program and had failed to make satisfactory progress during his eight months at Bonneville. They stated that appellant had physical and mental problems that interfered with his ability to effectively participate in treatment. Dr. Kramer testified that appellant's physical problems included the use of a crutch for walking, Parkinson's symptoms, extreme shakiness, and frequent difficulty with motor coordination.

Dr. Cespedes testified that appellant's mental problems had existed at least since 1960 and included "entrenched" behavior patterns and personality traits, including manipulative behavior. However, no specific instances of undesirable behavior or non-compliance with Bonneville program rules were described.

Dr. Kramer testified that appellant's mental diagnoses included pedophilia, atypical depression, post-traumatic stress disorder, and mixed personality disorder with dependent and anti-social features. Again, no specific instances of improper behavior by appellant were described. Dr. Kramer did report that defendant had great difficulty participating in treatment, frequently requiring extra help to complete his therapy homework assignments.

Dr. Kramer also testified that in addition to his other physical problems, appellant suffered from an inability to have penile erections. Dr. Kramer stated that measurement of penile tumescence through the use of a plethysmograph was the key method of assessing whether the sex modification therapy was successfully altering sexual arousal patterns. Appellant's inability to become tumescent therefore made it impossible to measure his progress in Bonneville's sex modification therapy.

The psychologists also testified that appellant had been taking a number of medications for his physical and mental problems. There had been concern that these medications were interfering with appellant's treatment progress. Accordingly, about four months after entering the Bonneville program, appellant had been transferred to the Veterans Administration Hospital for assessment of his medications. Changes in his medications were made, and on return to Bonneville from the Veterans Administration Hospital, his progress in the program was improved. Dr. Kramer admitted complimenting appellant on his improved progress after the medication adjustments. However, Dr. Cespedes testified that this improvement was due more to confrontation of appellant's manipulative behavior than to the medication changes.

The psychologists stated that in their opinion, the Bonneville treatment program would not, even in the possible two year maximum stay, sufficiently reduce the possibility that appellant might again commit a sexual offense. The reasons given for this opinion varied. Dr. Cespedes grounded her opinion on appellant's "entrenched" behavior problems. Dr. Kramer indicated that the primary problems were medical and psychiatric, and that further medication adjustment was needed to enable appellant to participate effectively in therapy. While admitting that many of these problems were not within appellant's control, Dr. Kramer also stated that appellant's motivation for treatment appeared to fluctuate, and that the Bonneville staff had been unable to get him to diligently and consistently work at his therapy.

Both psychologists testified that adequate treatment for appellant's problems would require at least four years, and recommended placement in the sex offenders program at the Utah State Prison. Dr. Kramer maintained that placement in the Bonneville program had been improper in the first place. In contrast to the information supplied to the trial court at the original sentencing hearing, Dr. Kramer stated that appellant had never been accepted for treatment by Bonneville, but that he had been ordered in against Bonneville's objections.

Appellant testified on his own behalf. He testified that he had been trying hard but doing poorly in the Bonneville treatment program until the medication

changes. He testified that the medication changes had in fact improved his mental alertness. As a result, he had completed therapy homework assignments that he had failed to complete previously, and also completed subsequent assignments. Finally, appellant expressed a desire to receive treatment so that his chances of re-offending might be reduced.

The trial court received two letters sent to the court into evidence at the hearing. One letter was from a social worker at the State Hospital, written near the end of appellant's evaluation there in January, 1989. The other was from a Department of Corrections worker who supervised the Bonneville program, and had been sent in September, 1988, when the order to show cause was first issued. These letters do not appear in the record before this court, nor does the transcript of the hearing reveal their contents.

After the hearing, the trial court revoked appellant's probation and ordered the imposition of the stayed prison sentence. Along with this order, the court recommended that appellant be placed into the sex offenders program at the prison.

The trial court made no written findings of fact to support its decision. However, a transcript of the hearing was made. The transcript revealed the court's finding that appellant "did some things, but he did not effectively participate in and he did not complete the [Bonneville] program." The court made no finding as to whether the lack of "effective participation" in treatment was due to willful behavior or other fault of appellant. Finding that there were no other available treatment alternatives for appellant, the original prison sentence was imposed.

## ISSUES

On appeal, we address the following issues: (1) Did the trial court's failure to make written findings of fact as to the nature of appellant's probation violation and the evidence relied upon violate his right to due process? (2) Was there a lack of evidentiary support for the finding that

Mr. Hodges violated a condition of his probation?

## FINDINGS OF FACT

Appellant argues that the trial court's failure to make specific written findings of fact supporting the revocation of his probation violated his due process rights under the federal constitution. He finds support for his argument in *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). In *Gagnon,* the United States Supreme Court held that due process requirements for revocation of parole, as set forth in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), also apply to probation revocation proceedings. *Gagnon,* 411 U.S. at 782, 93 S.Ct. at 1759. Those requirements are:

> "(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body ...; and (f) *a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.*"

*Gagnon,* 411 U.S. at 786, 93 S.Ct. at 1761–1762 (quoting *Morrissey,* 408 U.S. at 489, 92 S.Ct. at 2604) (emphasis added).

The state argues that written findings are not always required when probation is revoked. It points out that in *Morishita v. Morris,* 621 P.2d 691 (1980) (*Morishita I*), the Utah Supreme Court distinguished *Gagnon* as applying to administrative revocation proceedings, as opposed to judicial proceedings with probationer represented by counsel and a transcript created. In the latter situation—identical to the present case—written findings were deemed unnecessary. *Morishita I,* 621 P.2d at 693 n. 2.

Utah Code Ann. § 77-18-1(9)(e) (Supp. 1990) requires the court to "make findings of fact" after a probation revocation hearing, but does not specify that the findings

be written. Additionally, Rule 52(a), Utah Rules of Civil Procedure, does not mandate written findings on every issue tried before a judge: "It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of evidence...."

■ Accordingly, we agree that written findings of fact are not necessary in every judicial probation revocation. A complete trial court record and transcript can suffice in lieu of written findings. However, the record and transcript must still satisfy the *Gagnon* requirement that the evidence relied on and the reasons for revoking probation be revealed.

The chief purpose of findings of fact, whether separately written or found in a transcript, is to enable a reviewing court to accurately determine the basis for the trial court's decision. *See, e.g., Morishita v. Morris*, 702 F.2d 207, 210 (10th Cir.1983) (*Morishita II*) (probation revocation) (written findings constitutionally required only if the transcript and record do not enable a reviewing court to determine basis of decision); *Rucker v. Dalton*, 598 P.2d 1336, 1338–39 (Utah 1979) (civil actions generally) (reviewing function of appellate court seriously undermined where findings are insufficiently detailed to disclose the steps by which ultimate conclusions are reached).

■ Our attention, therefore, turns to the question of whether the record before this court sufficiently reveals the evidence relied on and the trial court's reasons for revoking appellant's probation. We find that the record is deficient in both respects.

The record does not include the letters from the State Hospital and the Bonneville program supervisor that were reviewed by the trial court at the probation revocation hearing. The transcript of the order to show cause hearing reveals nothing about the content of the letters; nor does it reveal how much, if at all, the court relied on these letters in making its decision.

Both letters apparently contained information relevant to the court's decision. The State Hospital letter was quite recent, was addressed directly to the court, and was disclosed by the court to counsel for appellant and the state at the start of the order to show cause hearing. The letter from the Bonneville supervisor had also been written to the court, was written when efforts were begun to remove appellant from the Bonneville program, and was offered by appellant's counsel as evidence against revoking probation.

In a bench trial or other proceeding in which the judge serves as fact finder, the court has considerable discretion to assign relative weight to the evidence before it. This discretion includes the right to minimize or even disregard certain evidence. However, *Gagnon* requires that any evidence relied on in probation revocation be revealed in the court's findings. The findings before this reviewing court, in the form of the hearing transcript, reveal the admission of two pieces of evidence thought relevant by the trial court and by appellant's counsel. The failure of the findings to either reveal the contents of those letters, or to at least indicate that those letters were not relied on, is a violation of the due process requirement that all evidence relied upon in revoking probation be revealed.

■ The transcript also fails to adequately show the court's reasons for revoking appellant's probation. Specifically, the transcript does not reveal whether appellant was found in willful violation of the conditions of his probation, or whether he was simply found, through no fault of his own, to be unable to make adequate progress in his treatment at Bonneville.

Drs. Cespedes and Kramer testified that appellant's progress in the Bonneville program was unacceptably slow and that it would have required at least twice the maximum time available in the Bonneville program to significantly reduce appellant's chances of re-offending. They indicated that appellant's slow progress had several possible causes. These included long-standing mental problems, physical problems, medications, manipulative behavior, and inconsistent motivation. It was acknowledged that some of these problems raised questions of appellant's ability rath-

er than willfulness; however, the manipulativeness and motivation problems were apparently regarded as subject to his control.

While the transcript does not show whether the trial court found appellant's slow progress at Bonneville to be due to factors within his control, it does reveal that the court defined the requirement that appellant "participate" in the program to mean "effectively participate." This in turn meant that appellant be helped toward rehabilitation by the program:

> THE COURT: When I place someone on probation, I am giving them a chance and I set some conditions of probation. And when I set a condition that someone is to enter into and participate in some sort of a counseling program, I expect participation. That participation means just exactly that. Full participation. The only reason I am doing that is to bring about rehabilitation.
>
> .    .    .    .    .
>
> From what I have heard here, he did not participate. He did some things, but he did not effectively participate in and he did not complete the program.

Had the court, based on sufficient evidence, specifically found that appellant's slow progress at Bonneville was due to willfully inadequate participation in his treatment, it would have had discretion to revoke his probation. In other words, mere token participation in his treatment would have been a violation of conditions sufficient to justify revocation of probation.

Unfortunately, the record on review here, while revealing some evidence to support a finding that appellant willfully violated the conditions of his probation, also strongly suggests that appellant's probation was revoked because of problems not within his control. Dr. Kramer's testimony emphasized appellant's physical and medication problems over and above his motivation problems. Indeed, Dr. Kramer's testimony can be interpreted to mean that probation was revoked simply because appellant was unable to have an erection, which was needed to measure treatment progress. Even the state, in its argument to the trial court, stressed that "because of his related physical and mental problems, he [appellant] simply is incapable of participating in a satisfactory manner in the Bonneville halfway house."

The record on review does not adequately reveal the evidence relied on by the court, nor does it reveal whether appellant's parole was revoked because of problems beyond his control or within his control. Therefore, his due process rights under *Gagnon v. Scarpelli* were violated. In addition, the statute requiring findings by the court was not complied with. Accordingly, we remand the case for a rehearing on whether appellant's probation should be revoked, with instructions to the trial court, in the event it again revokes probation, to enter clear findings as to the evidence relied on and the reasons for revoking parole.

## SUFFICIENCY OF THE EVIDENCE

Because the issue will arise at the rehearing, we address the question of what evidence may be sufficient to justify the modification or revocation of appellant's probation.

Our analysis is in two parts. We first address whether a showing of willful violation of a condition of probation is necessary before probation can be revoked.[2] Second, we address the burden and degree of proof necessary to find that a condition of probation has been violated.

### *The Need for Fault*

Utah Code Ann. § 77–18–1(9) (Supp.1990) sets forth the process for the modification or revocation of probation:

---

2. The state correctly does not urge that appellant's failure to complete the Bonneville program during his eight month stay constituted a proper ground for revoking probation. This would clearly be unfair where testimony of a program psychologist showed a minimum completion time of one year. Accordingly, our analysis focuses on appellant's alleged failure to "participate in" the program.

(a) Probation may not be modified or extended except upon waiver of a hearing by the probationer or upon a hearing and a finding in court that the probationer has violated the conditions of probation. Probation may not be revoked except upon a hearing in court and a finding that the conditions of probation have been violated.

.　　.　　.　　.　　.

(e) After the hearing the court shall make findings of fact. Upon a finding that the defendant violated the conditions of probation, the court may order the probation revoked, modified, continued, or that the entire probation term commence anew. If probation is revoked, the defendant shall be sentenced or the sentence previously imposed shall be executed.

Although the statute incorporates the *Gagnon* requirements, it does not specify whether a violation of a condition of probation must be found to be willful in order to authorize the modification or revocation of probation. In the present case, the state asserts that willfulness or fault on the part of appellant is not necessary to justify the revocation of probation. We agree that fault is not necessary in every instance of probation revocation, but disagree that this is such an instance.

The Utah Supreme Court first dealt with the issue of probation revocation, under a predecessor statute to Utah Code Ann. § 77–18–1, in *State v. Zolantakis*, 70 Utah 296, 259 P. 1044 (1927). In *Zolantakis*, probationer had pled guilty to violating the Prohibition Act, a felony. His prison sentence was suspended on the condition that he remain on "good behavior." At a subsequent order to show cause hearing, he was found to have violated this condition by continuing to possess intoxicating liquors. His probation was revoked, and imprisonment imposed.

Because the probationer in *Zolantakis* had not been informed in advance of the nature of the alleged probation violation, and because he had not been permitted to cross-examine the state's witnesses at the revocation hearing, the Utah Supreme Court reversed. The court found a probationer's liberty interest to be important and not subject to revocation without a proper hearing and just cause:

The right to personal liberty may be as valuable to one convicted of a crime as to one not so convicted, and so long as one complies with the conditions upon which such right is assured by judicial declaration, he may not be deprived of the same. Such right may not be alternatively granted and denied without just cause.

259 P. at 1046.

In *State v. Bonza*, 106 Utah 553, 150 P.2d 970 (1944), the Utah Supreme Court, citing *Zolantakis*, stated, "As long as the defendant to whom leniency has been extended keeps faith with the court and the agency which supervises his probation, he is entitled to the benefits of the probation or suspension." *Bonza*, 150 P.2d at 972. We believe that "keeping faith" necessarily means that, in order to revoke probation, a violation of a probation condition must, as a general rule, be willful.

The United States Supreme Court considered the issue of fault in violating a condition of probation in *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). In *Bearden*, probation had been revoked and imprisonment imposed because probationer had failed to meet the condition that he pay a fine and restitution. Revocation had been ordered without regard to evidence suggesting that the probationer had made good faith efforts to pay, and that he had been unable to pay because of circumstances beyond his control. The Supreme Court reversed, holding that in order to revoke probation for failure to make money payments, the sentencing court must either find that probationer was at fault or that alternatives other than imprisonment are inadequate to meet the state's interests in punishment and deterrence. *Id.* at 672, 103 S.Ct. at 2072.

The *Bearden* Court also cautioned that a finding of fault would not necessarily be required in probation revocation proceedings not involving the failure to pay a fine. Using chronic drunken driving as an exam-

ple, the Court noted that "it may indeed be reckless" to continue probation for someone unable to control a problem, thereby posing a threat to the safety or welfare of society. *Id.* at 668 n. 9, 103 S.Ct. at 2070 n. 9.

Consistent with Utah law and with *Bearden,* we hold that, as a general rule, in order to revoke probation for the violation of a condition of probation not involving the payment of money, the violation must be willful or, if not willful, must presently threaten the safety of society.

In the present case, the probation condition allegedly violated was not a money payment, but rather participation in a treatment program designed to reduce the likelihood that appellant would commit another sexual offense. Although appellant entered the Bonneville program, evidence suggested that his progress was too slow, and that his chance of re-offending would not be reduced by the program. We agree with the trial court's definition of "participation" as "full participation," to the extent that appellant was obligated to show genuine, not token, participation in the Bonneville program. If his inadequate progress was caused by non-genuine, token participation in the Bonneville program, he has willfully violated the requirement that he participate in treatment, and his probation can properly be revoked.

If, on the other hand, the court finds that appellant's failure to progress at an adequate rate resulted from problems beyond his control, his probation cannot be revoked unless it is also found that, because of this failure, appellant poses a present danger to others.

The facts suggest that appellant, at least while enrolled in the Bonneville program, does not pose such a danger. In response to the trial court's concerns at the original sentencing, the Bonneville program was specifically described as safe and closely supervised. No evidence in the revocation proceedings suggested that appellant was violating program rules, failing to stay on the premises, or otherwise eluding supervision. The only danger was a projected one when, having spent as much time in the program as was available, expert opinion was that he would not have reduced his risk of re-offending.

If appellant's failure to make adequate progress in the Bonneville program is found to be neither willful nor to pose a present threat to safety, his probation cannot be revoked under the conditions of his probation agreement. We only extend the meaning of "participate" in treatment at Bonneville to mean "genuine participation" and not token participation. To further extend the meaning of "participate" to "participate at an acceptable rate, regardless of fault," would violate the requirement that a probationer be clearly and accurately apprised of the expectations for remaining on probation. *See State v. Denney,* 776 P.2d 91, 93 (Utah Ct.App.1989) (probation sentences must be rendered with clarity and accuracy in order to avoid the possibility of confusion and injustice); *Rich v. State,* 640 P.2d 159, 162 (Alaska Ct.App. 1982) (probation conditions must be sufficiently precise and unambiguous to inform probationer of conduct essential to retain liberty).

At the original sentencing, appellant was clearly told that his probation depended upon his following all rules of the Bonneville program. However, there is no indication that Bonneville's rules included a requirement that he progress in treatment at a particular minimum rate. Nor does the record otherwise show that appellant was put on notice that his probation could be revoked, even if he participated in treatment to the best of his ability, if he was deemed to be progressing too slowly. The conditions of appellant's probation, as reflected in his original sentencing, are thus not clear enough to justify revoking his probation without a finding of fault or present danger.

We sympathize with the desire to make scarce treatment resources, such as the Bonneville program, available preferentially to those most likely to benefit from them. We also recognize that, on occasion, it will be discovered that an individual is unlikely to benefit from treatment only after treatment has begun. We accordingly

have no objection to including as a condition of probation, when an offender is placed into treatment instead of prison, a requirement that he make adequate progress in treatment, regardless of fault. In the present case, the problem is not so much the likelihood that appellant was making inadequate progress despite his best efforts as it is the fact that he was never informed that he had to make progress at a certain rate regardless of fault.

We believe such a condition would help avoid problems such as arose in the present case, where, apparently, a presentence assessment that appellant would benefit from the Bonneville program turned out, for whatever reason, to be mistaken. The offender placed in treatment under such a condition would be provided extra incentive to demonstrate both the ability and motivation to benefit from treatment, lest probation be lost. There would be little incentive to manipulate or "hide" behind real or feigned disabilities to excuse inadequate treatment progress.

### Burden of Proof

Utah Code Ann. § 77–18–1(9) also does not specify the standard of proof required to show violation of a condition of probation. Subsection (d) of the statute, however, places the burden of proof, once the probationer has denied the alleged violation, on the state.[3]

The degree of proof required is less clear. Past Utah cases suggest a lenient standard. In *Williams v. Harris*, 106 Utah 387, 149 P.2d 640 (1944), the Utah Supreme Court held that a finding of a probation violation must be based upon "some competent evidence." 149 P.2d at 642. Shortly thereafter, the court again addressed probation revocation in *Bonza*, 150 P.2d 970. While saying nothing to clarify or alter the "some competent evidence" standard of proof, the court noted that "the proceeding

for revocation of probation is not a criminal prosecution." *Id.* at 972.

■ Appellant argues that the "some competent evidence" standard is too nebulous to apply to probation revocation. We agree, and hold that the standard to be used in proving a violation of a condition of probation is a preponderance of the evidence. We base our holding on several observations.

First, a probation revocation proceeding involves an individual who has already pled guilty to a crime or been found guilty beyond a reasonable doubt. This offender has subsequently entered into a probation agreement that is essentially a contract with the court: the court agrees to stay part or all of the statutory sentence, and the probationer in turn agrees to perform or abstain from performing certain acts. As in a contract dispute, proof of breach by the probationer is properly subject to a preponderance of evidence standard.

Second, subsection (b) of Utah Code Ann. § 77–18–1(9) requires a finding of probable cause that probation has been violated before the revocation hearing can be held. In a criminal prosecution context, probable (or reasonable) cause means that from the facts known and the inferences drawn from those facts, a reasonable and prudent person would be justified in believing an offense has been committed. *State v. Cole*, 674 P.2d 119, 125 (Utah 1983). In a probation context, the term "breach of condition" can be substituted for "offense" to identify the standard for holding a revocation hearing. The specificity of the probable cause standard for compelling a probationer to appear at a revocation hearing requires that an at least equally articulable and stringent standard should apply to actually find a violation of probation. The "some competent evidence" standard does not meet this requirement; the preponderance of evidence standard does.

3. Subsection (d) reads: At the hearing, the defendant shall admit or deny the allegations of the affidavit. If the defendant denies the allegations of the affidavit, the prosecuting attorney shall present evidence on the allegations. The persons who have given adverse information on which the allegations are based shall be presented as witnesses unless the court for good cause otherwise orders. The defendant may call witnesses, appear and speak in his own behalf, and present evidence.

Third, sentencing and probation hearings are relatively informal. Most rules of evidence do not apply. Rule 1101, Utah Rules of Evidence (1990). While evidence presented at such hearings is certainly subject to challenge on the basis of the traditional reliability concerns underlying evidentiary rules, the overall informality suggests a standard of proof that is comprehensible and relatively simple. Under the preponderance of evidence standard, the court needs only to balance the evidence, using discretion to weigh its importance and credibility, and decide whether the probationer has more likely than not violated the conditions of probation.

We finally note that our adoption of the preponderance of the evidence standard is consistent with other courts that have articulated a standard of proof in probation revocation proceedings. *See, e.g., Morishita II*, 702 F.2d at 210; *Baynard v. State*, 318 Md. 531, 569 A.2d 652, 655 (1990); *Wink v. State*, 317 Md. 330, 563 A.2d 414, 414–418 (1989) (extensive analysis of degree of proof in probation revocation); *State v. Alfaro*, 127 Ariz. 578, 623 P.2d 8, 10 (1980); *Justice v. State*, 550 N.E.2d 809, 810 (Ind.App.1990); *State v. Fortier*, 20 Or.App. 613, 533 P.2d 187, 188 (1975).

On rehearing in the present case, in order to revoke probation, the state must show by a preponderance of the evidence that either (1) appellant's participation in the Bonneville program was token or willfully inadequate, or (2) appellant presented a present danger to others as a result of his slow progress in the program.

### CONCLUSION

The revocation of appellant's probation is reversed and the issue is remanded for a rehearing on whether he has violated the terms of his probation. If probation is again revoked on rehearing, the trial court's findings must clearly identify the evidence relied on and the reasons for revoking probation. Violation of the requirement that he participate in treatment or failure to make adequate treatment progress resulting in danger to others must be shown by a preponderance of the evidence.

DAVIDSON and BILLINGS, JJ., concur.