NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ERIC JOEL LOPEZ, *Appellant.*

No. 1 CA-CR 24-0496

FILED 10-31-2025

Appeal from the Superior Court in Yavapai County
No.  P1300CR201901035
The Honorable Michael P. McGill, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Ortega & Ortega PLLC, Phoenix
By Alane M. Ortega
*Counsel for Appellant*

―――――――――――――――

**MEMORANDUM DECISION**

Judge Michael S. Catlett delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge Andrew M. Jacobs joined.

―――――――――――――――

**C A T L E T T**, Judge:

¶1         Eric Joel Lopez ("Lopez") appeals the superior court's order revoking his probation and his resulting sentence.  Counsel for Lopez filed a brief under *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), certifying that, after diligently searching the record, counsel found no non-frivolous question of law.  Counsel asked us to review the record for arguable issues. *See Penson v. Ohio*, 488 U.S. 75 (1988); *State v. Clark*, 196 Ariz. 530, 537 ¶ 30 (App. 1999).  Lopez filed a supplemental brief, arguing the charges resulting in his probation revocation were eventually dismissed.  He argues he did not commit a crime, so he did not violate his probation.  After independently reviewing the record, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2         We view the facts in the light most favorable to sustaining the probation revocation. *State v. Tatlow*, 231 Ariz. 34, 39–40 ¶ 15 (App. 2012).

¶3         Lopez pleaded guilty to aggravated assault.  In October 2020, the Yavapai County Superior Court accepted Lopez's plea and sentenced him to supervised probation for four years.

¶4         In July 2024, Lopez's probation officer petitioned to revoke his probation for failing to "maintain a crime-free lifestyle by obeying all laws, and not engaging or participating in any criminal activity."  The probation officer alleged that on July 7, 2024, Lopez was arrested for disorderly conduct and criminal damage.  Lopez denied the allegations and the court scheduled a violation hearing.

¶5         Three days before the violation hearing, the State amended the petition to include an allegation that Lopez operated a vehicle while knowing his license was suspended.  At the hearing, Lopez objected to the untimely notice of the suspended-license issue. *See* Ariz. R. Crim. P. 27.8(a)(2), (b)(1).  The State opted to proceed without resolving the license

issue. Lopez had no objection, so the court dismissed the allegation and proceeded with the hearing.

¶6          At the hearing, a Yavapai County Patrol Deputy testified about the events on July 7, 2024. The State also introduced, and the court admitted, the Deputy's body cam footage and photos.

¶7          The Deputy testified he was called to a house where a resident, who goes by the name Woody, said he heard Lopez "flip out a knife," then watched him puncture the back tires of a vehicle, and that he could "hear air hissing." Lopez's girlfriend, who has three children with Lopez, owned the vehicle. Lopez's girlfriend and Woody are not related, but she calls him "dad." Woody estimated the damage was about $650.

¶8          Lopez's girlfriend told the Deputy she went to Woody's house because she did not want to be in the house she lived in with Lopez because Lopez had been verbally abusive. Lopez's girlfriend said Lopez confronted her at Woody's house earlier in the day, demanding to know who was inside and yelling at her to come outside. She refused and he left. Later in the evening, Lopez's girlfriend said Lopez called her to come home to take care of the kids because he had to get some sleep before work. The girlfriend told Lopez she would return home after he left for work. She usually could monitor when Lopez left by using cameras in their home, but she thought he turned them off. Instead, she said Lopez returned to Woody's house and demanded she open her car to get a diaper bag, but she refused because he had previously "destroyed" her belongings. The girlfriend then heard a confrontation between Lopez and Woody, and Woody told her that Lopez had "slashed her tires."

¶9          The Deputy left to question Lopez and found him at the home he shared with his girlfriend. The Deputy noticed Lopez's truck was not parked outside. He found the truck parked down the street approximately five hundred feet away. The Deputy read Lopez his *Miranda* rights and questioned him. Lopez admitted to visiting Woody's house and asking his girlfriend to come home because he had to work at 2 a.m. But he denied going back a second time or damaging her tires, instead stating he drove the kids to three different parks that day and then returned home. The Deputy told Lopez that "multiple people" said he slashed his girlfriend's tires, but Lopez responded that "all those people are drug addicts." Lopez told the Deputy he parked his truck down the street because he told his girlfriend he was going to take the kids to Phoenix and did not want her to know he was home. Lopez told the Deputy that he had a knife for work, and that he thought it was in the center console of the truck. When

searching the truck, the Deputy found a foldout knife in the driver's side door panel. The Deputy testified he thought that location was significant because it meant the knife was used recently.

¶10        After hearing the Deputy's testimony and reviewing the body cam footage and photos of the punctured tires and knife, the court determined that the State had proven by a preponderance of the evidence that Lopez violated his probation. The court found that Lopez's actions of lying to his girlfriend about taking the kids to Phoenix, parking his truck down the street, and disabling the security camera "corroborate[d] [Lopez's] intention in confronting [his girlfriend] because of his anger." The court also found that Lopez had access to a knife, and his girlfriend's tires were slashed. The court found Lopez disturbed Woody and his girlfriend's peace and quiet "through violent or seriously disruptive behavior."

¶11        At the disposition hearing, the court sentenced Lopez to four years in prison, with 110 days of presentence incarceration credit. The court acknowledged the sentence was above the presumptive amount. But it concluded that Lopez's prior felony conviction, and the fact that Lopez used a knife against his girlfriend in this incident and in the aggravated assault resulting in probation, justified an aggravated sentence.

¶12        Lopez timely appealed. We have jurisdiction. A.R.S. § 13-4031; *see State v. Regenold*, 226 Ariz. 378, 378 ¶ 1 (2011).

## DISCUSSION

¶13        Lopez maintains that the State eventually dismissed the charges against him for criminal damage and disorderly conduct because GPS from his phone records proved he was elsewhere, and a witness recanted. He argues he did not commit a crime, so he did not violate his probation. There is no evidence in the record supporting that the State dismissed the charges against Lopez, or, if the State did so, why it did so.

¶14        But even assuming the State dismissed the charges, "the function of a probation violation hearing is not to decide guilt or innocence but to determine, by a preponderance of all reliable evidence, whether a probationer has violated the terms and conditions of his probation." *State v. Alfaro*, 127 Ariz. 578, 579 (1980); *see also State v. Pietsch*, 109 Ariz. 261 (1973) (affirming probation revocation even after the State dismissed charges). "The purpose of such proceedings is to ascertain whether continued probation is still an effective means of rehabilitation and in the best interest of society." *Alfaro*, 127 Ariz. at 579.

**¶15**    Here, the court found the State proved by a preponderance of evidence that Lopez violated his probation by failing to "maintain a crime-free lifestyle by obeying all laws, and not engaging or participating in any criminal activity." *See* Ariz. R. Crim. P. 27.8(b)(3) ("A violation must be established by a preponderance of the evidence."). The court determined that Lopez's denials to the Deputy on the body cam were not credible because he tried to hide his truck and admitted to lying to his girlfriend about going to Phoenix. The court also found that Lopez had access to a knife, that his girlfriend's tires were slashed, and that he disturbed his girlfriend and Woody's peace and quiet. Viewing the facts in the light most favorable to upholding the revocation, there was sufficient evidence to support the court's finding that Lopez violated his probation. *Tatlow*, 231 Ariz. at 39–40 ¶ 15.

**¶16**    We have also read and considered counsel's brief and have independently reviewed the record for any other arguable issues. *See Leon*, 104 Ariz. at 300. We find none. Lopez was present and represented by counsel at all critical stages of the proceedings against him. The record reflects that the superior court afforded Lopez his constitutional and statutory rights and conducted the proceedings consistent with the Arizona Rules of Criminal Procedure. The sentence imposed was within the range in Lopez's plea agreement.

## CONCLUSION

**¶17**    We affirm Lopez's probation revocation and sentence. Defense counsel's obligations to represent Lopez in this appeal will end after informing Lopez of the outcome and his future options, unless counsel believes there is an issue appropriate for a petition for review to the Arizona Supreme Court. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). On the court's own motion, Lopez has 30 days from the date of this decision to move for reconsideration or petition for review.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:            JR