**Terry JUSTICE, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 22A01–8912–CR–504.

Court of Appeals of Indiana, First District.

Feb. 28, 1990.

Steven A. Gustafson, Lorch & Naville, New Albany, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Appellant-defendant Terry Justice appeals from the trial court action continuing Justice's sentence after his probation had been revoked.

We affirm.

Justice's probation was revoked in August, 1985. At the point at which Justice's probation was revoked, the charges underlying the State's allegations had not yet been disposed of. By April, 1989, all the charges underlying the revocation of Justice's probation had been resolved favorably to him. Shortly after the court revoked Justice's probation, three misdemeanor charges were dismissed by the State. In November, 1988 the supreme court reversed Justice's burglary conviction because the evidence was insufficient. *Justice v. State* (1988), Ind., 530 N.E.2d 295. In February, 1989, Justice moved for discharge on fraud, theft, and possession of cocaine and marijuana charges. That motion was granted April 5, 1989. On March 2, 1989 the court held a hearing on whether to set aside the revocation. The court decided to continue revocation of Justice's probation.

There is one issue presented in this appeal: whether double jeopardy principles bar the use of the charges which were eventually resolved in Justice's favor to continue the execution of Justice's sentence.

Justice reasons that the charges which were dismissed under Ind. Crim.Rule 4(C), and those misdemeanor charges which were dismissed in 1985 and are now barred by the two-year statute of limitations, Ind. Code 35–41–4–2(a)(2), may no longer be used to support revocation because the policies expressed in those enactments prohibit their use. He contends the remaining burglary conviction, reversed by the supreme court, also may not be used to support revocation, because the State did not present new evidence at the March, 1989 hearing of the facts underlying the alleged burglary. Justice concludes that under *Brown v. State* (1983), Ind.App., 458 N.E.2d 245, the evidence was insufficient to support continued revocation of his probation.

■ Justice's probation was revoked because he had violated the condition that he remain on good behavior. In proving that a defendant has violated the condition of "good behavior," the State must prove by a preponderance of the evidence that the defendant has engaged in unlawful activity. *Brown*, 458 N.E.2d at 249. Inasmuch as Justice's probation was not revoked because he had committed a criminal offense, this case is similar to *Culley v. State* (1979), 179 Ind.App. 345, 385 N.E.2d 486, where Culley was accused of violating the condition that he refrain from using narcotic drugs, and from associating with persons of harmful character. In *Culley*, the court held that despite Culley's acquittal, prior to revocation, of possession of marijuana and maintaining a common nuisance, former jeopardy analysis did not apply, in part because violation of a probation condition is not an adjudication of guilt. *Id.* 385 N.E.2d at 488.

■ Following *Culley* was *Jackson v. State* (1981), Ind.App., 420 N.E.2d 1239. The court was confronted with a question similar to *Culley*, except that Jackson's probation was revoked because he had committed a crime, although he had been acquitted of the crime before his probation was revoked. Revocation was upheld where the evidence admitted at the revocation hearing met the State's preponderance burden. *Id.* at 1242. Justice points to the disposition in *Brown v. State*, 458 N.E.2d 245 to support his theory that the reversed burglary conviction cannot support the revocation. However, the holding in *Brown* does not compel such a conclusion. The State had alleged that Brown had committed an offense, and proffered his conviction of involuntary manslaughter as the only evidence. This proof became insufficient once the conviction was reversed on appeal, the court held, because the fact of conviction was the sole evidence of probation violation. However, the court stated that proof of a conviction is not necessary to show that the probationer violated a condition of his probation, and that Brown's

probation could have been revoked if he had violated the basic "good behavior" condition. The court distinguished between proof of the conduct and proof of conviction of a crime. Thus, revocation may be based upon evidence of the commission of an offense, even if the probationer has been acquitted of the crime after trial, *id.*, citing *Jackson v. State* (1981) Ind.App., 420 N.E.2d 1239.

Justice asserts that we should determine that double jeopardy applies in his case in light of *Smalis v. Pennsylvania* (1986), 476 U.S. 140, 106 S.Ct. 1745, 90 L.Ed.2d 116. After the prosecution's case in a trial to the bench, the trial judge granted petitioner's demurrer. After holding that a demurrer was an acquittal for purposes of double jeopardy, the court noted that in the case of a bench trial, a successful postacquittal appeal for the government would necessarily result in a new trial, because there would be no jury conviction to resort to. By contrast, in those cases in which a judge pronounced an acquittal after a jury had made a determination of guilt, and the government successfully appeals, the jury verdict could be reinstated without holding a new trial. Accordingly, the *Smalis* court concluded, adopting similar language from *United States v. Jenkins* (1975) 420 U.S. 358, 370, 95 S.Ct. 1006, 1013, 43 L.Ed.2d 250;

> "... the double jeopardy clause bars a postacquittal appeal by the prosecution not only when it might result in a second trial, but also if reversal would translate into 'further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged.'"

*Smalis* 476 U.S. at 145–46, 106 S.Ct. at 1749.

Justice contends that the 1989 revocation proceeding is the very sort of "proceeding devoted to the resolution of factual issues going to the elements of the offense charged" that the Supreme Court was re-ferring to. His argument is unconvincing when we examine the facts of *Jenkins*. In that case, the Supreme Court found the government was barred from bringing an appeal, where the trial was to the bench, and the judge had dismissed the indictment, submitting findings from which it could not be determined whether the court had found in favor of Jenkins on the issue of his guilt. An appeal was foreclosed because, even if the trial court were to receive no additional evidence, it would still be necessary for it to make supplemental findings.[1] The *Jenkins* court, then, was referring to the need for the court to make supplemental findings as "further proceedings." Those findings would go to petitioner's guilt or innocence of the "offense charged." Accordingly, the Supreme Court cases proffered by Justice do not undermine our holdings in *Jackson* and *Culley*.

Justice's argument on appeal challenging the sufficiency of the evidence at the 1989 hearing centers only on the evidence establishing burglary. Although the court did not err per se in relying on the burglary evidence as a basis for revocation, we must determine whether the State met its preponderance burden at the hearing. *Jackson, supra.* The court below recalled on the record the evidence presented in the 1985 revocation hearing, and found it to have been sufficient to sustain revocation. Apparently, the transcript of the 1985 hearing was unavailable. Although we believe the court could take judicial notice of the evidence presented in an earlier hearing in the *same* matter, *see Freson v. Combs* (1982), Ind.App., 433 N.E.2d 55, we have no means to review the trial court's determination. However, we may still find in favor of the trial court's action below, because the court could rely on the charges on which Justice was discharged and the charges which were dismissed.

---

1. The Supreme Court re-examined the *Jenkins* holding in *United States v. Scott* (1978), 437 U.S. 82, 86–87, 98 S.Ct. 2187, 2191–2192, 57 L.Ed.2d 65, and held that the *Jenkins* rule was too broad where it included cases in which the defendant moved for termination of the proceedings after jeopardy had attached but before a determination of guilt or innocence. *Jenkins* was expressly overruled in *Scott.*

**812**

This court has held that evidence of past criminal conduct, for which defendant has been discharged under Crim.R. 4, while precluding subsequent prosecution, does not preclude admission of the underlying facts in unrelated proceedings to reflect criminal conduct. *Hickman v. State* (1989), Ind.App., 537 N.E.2d 64. That case is sufficiently analogous to the instant case to permit the same result here. The purpose of Crim.R. 4 is to ensure a speedy trial on outstanding charges. It has no application to proceedings, like revocation, in which the conduct underlying the offense has some collateral consequence for the defendant. *See Oliver v. State* (1982), Ind., 431 N.E.2d 98.

We are likewise convinced that the misdemeanor charges dismissed in 1985 could support Justice's continued revocation. Although the statute of limitations would have barred prosecution on these charges when the 1989 hearing took place, the statute of limitations merely bars *prosecution* of a misdemeanor offense unless it is commenced within two years of the commission of the offense. As we held in *Culley, supra,* violation of a condition of probation does not constitute an offense for purposes of double jeopardy.

There was no legal impediment to using evidence of the conduct underlying the charges to support Justice's continued revocation based on the evidence presented in the 1985 revocation hearing. Except for the burglary charge, Justice does not challenge sufficiency of the evidence to support the revocation. Accordingly, the decision of the trial court is affirmed.

Affirmed.

RATLIFF, C.J., and SHIELDS, P.J., concur.