STATE of Utah, Plaintiff and Appellee,

v.

Dell D. ARCHULETA, Defendant and Appellant.

No. 900375–CA.

Court of Appeals of Utah.

May 28, 1991.

Lisa J. Remal, Ronald S. Fujino (argued), Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen., Charlene Barlow (argued), Asst. Atty. Gen., for plaintiff and appellee.

Before BILLINGS, GREENWOOD and JACKSON, JJ.

## OPINION

BILLINGS, Associate Presiding Judge:

Appellant Dell D. Archuleta was convicted of one count of theft and one count of theft by deception. The trial judge sentenced appellant to a prison term of one to fifteen years at the Utah State Prison and imposed a fine of $10,000 and restitution of $77. Both the sentence and the fine were stayed and appellant was placed on probation for eighteen months with accompanying conditions. Subsequently, Adult Probation and Parole ("APP") filed an affidavit in support of an order to show cause, alleging various probation violations. Following the order to show cause hearing, the court found appellant had violated his probation. Consequently, the court revoked appellant's original probation and reinstated another period of probation with additional conditions. It is from the order of revocation that appellant appeals. We affirm.

## FACTS

On October 6, 1989, a jury convicted appellant Dell D. Archuleta of one count of theft, a second degree felony, in violation of Utah Code Ann. § 76-6-404 (1990), and one count of theft by deception, a class B misdemeanor, in violation of Utah Code Ann. § 76-6-405 (1990). The trial judge sentenced appellant to a prison term of one to fifteen years and imposed a fine of $10,-000.

The court suspended both the prison term and the fine, instead imposing an eighteen-month probationary period on the following conditions: (1) the usual and ordinary conditions required by APP, including a requirement that appellant submit monthly reports; (2) appellant must serve ninety days in the Salt Lake County jail with credit given for time served; (3) appellant must pay a fine of $1,000 at the rate of $100 per month beginning January 1, 1990; (4) appellant must pay restitution of $77 in full by June 1, 1990; (5) appellant must obtain and maintain full-time employment, forty hours per week, no later than October 9, 1989; (6) appellant must commit no crimes; (7) appellant must pay child support in the amount of $75 per month starting November 1, 1989; all child support arrearages must be paid within eighteen months at a rate of $225 per month for total child support payments of $300 per month, one-half to be paid at the first of the month and the other half to be paid on the fifteenth of the month; and (8) appellant must be evaluated by APP for drug or alcohol abuse and if needed, enter any program deemed appropriate by APP.

Subsequently, appellant failed to submit a monthly report, failed to maintain full-time employment, failed to pay his fine, and failed to pay child support. Based upon APP's allegations that appellant had violated the terms of his probation, the court issued an order to show cause.

At the order to show cause hearing, APP established that appellant was routinely late in filing his monthly reports. Kevin Nitzel, appellant's probation officer from the start of his probation until January 1990, had to remind appellant of his obligation. Once appellant was reminded, he usually responded promptly. In February 1990, another probation officer, Harvey Van Katwyk, began supervising appellant.

Once again, appellant was routinely late in filing his report. In April 1990, still another probation officer, Karl Bartell, was assigned to appellant's case. When appellant once again failed to fill out his monthly report for April, Bartell reminded appellant of his obligation and appellant responded. When appellant failed to complete a report for May, however, Bartell filed a progress/violation report and an affidavit in support of an order to show cause.

Evidence regarding appellant's employment and payment history was also presented at appellant's probation revocation hearing. Although appellant did obtain full-time employment with the Red Lion Hotel around Thanksgiving of 1989, he left his job in February 1990 after being accused of stealing a pair of eyeglasses. Subsequently, appellant claimed he looked for full-time employment but could obtain only temporary employment through Job Service. Consequently, appellant claimed he could not meet all of his financial obligations and, therefore, he did not make payments on the court-ordered fine or his child support obligations.

The court made the following findings regarding appellant's noncompliance with the conditions of his probation: (1) appellant failed to report to APP in May 1990; (2) appellant failed to maintain verifiable, lawful employment and/or education; (3) appellant failed to pay $100 per month towards his fine; and (4) appellant failed to pay a total of $300 per month towards his child support obligation. Based on these findings, the court revoked appellant's probation and reinstated probation for eighteen months after his release from jail.[1]

Appellant appeals from the trial court's ruling on two grounds. First, appellant claims the trial court erred in revoking his probation due to his noncompliance with the monthly reporting requirement because APP waived its right to require appellant's strict compliance with the probation agreement by its repeated acceptance of the late monthly reports. Second, appellant claims the trial court erred in revoking his probation due to his failure to maintain full-time employment, pay his fine, and pay his child support, because his noncompliance with these conditions was not willful.

## PROBATION REVOCATION

### A. *Standard of Review*

■ "The decision to grant, modify, or revoke probation is in the discretion of the trial court." *State v. Jameson*, 800 P.2d 798, 804 (Utah 1990); *see also State v. Cowdell*, 626 P.2d 487, 488 (Utah 1981). In order to prevail in this case, therefore, appellant "must show that the evidence of a probation violation, viewed in a light most favorable to the trial court's findings, is so deficient that the trial court abused its discretion in revoking [appellant's] probation." *Jameson*, 800 P.2d at 804.

### B. *Standard of Proof*

■ Initially, we address the threshold issue of the standard of proof applicable in probation revocation proceedings. On appeal, the state questions the standard of proof recently adopted by this court in *State v. Hodges*, 798 P.2d 270 (Ct.App.), *cert. denied*, No. 900501 (Utah Dec. 26, 1990). In *Hodges*, we held that "the standard to be used in proving a violation of a condition of probation is a preponderance of the evidence." *Id.* at 278. Accordingly, "the court needs only to balance the evidence, using discretion to weigh its importance and credibility, and decide whether the probationer has more likely than not

---

1. The conditions of appellant's new probation included: (1) all conditions of probation previously imposed be in effect; (2) he must serve six months in jail with credit for time served; (3) within fifteen calendar days from his release from jail, he must be employed sixty hours per week and provide written verification of this employment; and (4) he must be enrolled in vocational training as soon as possible, but no later than ninety days after his release from jail and any costs he paid towards said vocational training can be deducted from the fine previously imposed. We note that the conditions imposed seem nearly impossible to perform. We are concerned as to how appellant can work sixty hours a week and attend vocational training. The terms of appellant's new probation, however, are not before us in this appeal.

violated the conditions of probation." *Id.* at 279.[2]

In its brief, the state claims this court's adoption of the preponderance standard in *Hodges* conflicts with Utah Supreme Court precedent holding that "to authorize termination of probation there must be some competent evidence of violation of the terms of probation." *Williams v. Harris*, 106 Utah 387, 149 P.2d 640, 642 (1944). In *Hodges*, this court acknowledged *Williams*, but because of the age of the case chose to adopt a preponderance standard, noting that "the 'some competent evidence' standard [was] too nebulous to apply to probation revocation." *Hodges*, 798 P.2d at 278.[3] Additionally, as the *Hodges* court noted, "our adoption of the preponderance of evidence standard is consistent with other courts that have articulated a standard of proof in probation revocation proceedings." *Id.* at 279 (citing *Morishita v. Morris*, 702 F.2d 207, 210 (10th Cir.1983); *State v. Alfaro*, 127 Ariz. 578, 580, 623 P.2d 8, 10 (1980); *Justice v. State*, 550 N.E.2d 809, 810 (Ind. Ct.App.1990); *Baynard v. State*, 318 Md. 531, 569 A.2d 652, 655 (1990); *Wink v. State*, 317 Md. 330, 563 A.2d 414, 414–18 (1989) (extensive analysis of degree of proof in probation revocation proceedings); *State v. Fortier*, 20 Or.App. 613, 533 P.2d 187, 188 (1975)). After reviewing *Hodges*, the Utah Supreme Court recently denied the state's petition for writ of certiorari.[4] We assume that if the supreme court ob-

jected to the preponderance standard adopted in *Hodges*, it would have granted certiorari. Furthermore, the standard of proof is not critical to this appeal as the trial judge found that appellant had violated the conditions of his probation "beyond a reasonable doubt."

### C. *Requirement of Willfulness*

■ Appellant claims he did not willfully violate his probationary conditions because he made good faith efforts to maintain full-time employment and pay his fine and child support payments. Thus, he claims the trial court abused its discretion in revoking his probation.

The issue of whether a finding of willfulness is required to justify probation revocation in failure to comply with court ordered payments was addressed by the United States Supreme Court in *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). In *Bearden*, the Court held that in a situation involving failure of an indigent probationer to pay a fine or restitution, revocation of probation requires a finding that the probationer willfully disobeyed the condition imposed by the court. *Id.* at 672–73, 103 S.Ct. at 2072–73. Although *Bearden* did extend significant rights to indigent probationers who are required to pay a fine or restitution, it did not address revocation proceedings in other contexts.[5]

---

2. We emphasize that the weighing of the evidence is to be done by the trial court, not this court. As previously stated, we merely consider on appeal whether the trial court has abused its discretion in finding by a preponderance of the evidence that a defendant has violated his or her probation.

3. For a complete discussion of this court's rationale for adopting the preponderance standard in probation revocation proceedings, see *Hodges*, 798 P.2d at 278–79.

4. As noted above, certiorari was denied on December 26, 1990. This denial, however, has not yet been reported in the Utah Advance Reports.

5. In *Black v. Romano*, 471 U.S. 606, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985), the Court noted that *Bearden*, "recognized substantive limits on the automatic revocation of probation where an indigent defendant is unable to pay a fine or restitution." *Id.* at 610, 105 S.Ct. at 2257. The

Court acknowledged, however, that they had not addressed the willfulness requirement in other revocation contexts by noting that they had "no occasion ... to decide whether concerns for fundamental fairness prohibit the automatic revocation of probation in any other context." *Id.* The Court has not addressed this issue subsequent to *Romano*.

Recently, however, in a case with a rather unusual factual context, we applied a qualified willfulness standard to a probation revocation case not involving the payment of money, stating that, "as a general rule, in order to revoke probation for the violation of a condition of probation not involving the payment of money, the violation must be willful or, if not willful, must presently threaten the safety of society." *Hodges*, 798 P.2d at 277. We emphasized however, that fault was not required in every case. *Id.* at 277–78.

In short, we agree with appellant that his failure to pay his fine and court-ordered child support must be willful in order to support a revocation of his probation. We disagree, however, with appellant's construction of the term willful as used in the context of probation revocation proceedings. Appellant equates the term willful with the word intentional as it is often used in other criminal contexts. This is not what we understand the United States Supreme Court to have said in *Bearden*. A careful review of *Bearden* is illustrative of the conduct required for a revocation of probation.

*Bearden* involved a defendant who pleaded guilty in a Georgia trial court to burglary and theft by receiving stolen property. Instead of entering a judgment of guilt, however, the court sentenced the defendant to probation on the condition that he pay a $500 fine and $250 in restitution, with $100 to be paid that day, $100 to be paid the next day, and the $550 balance to be paid within four months. The defendant borrowed money and paid the first $200, but was laid off from his job about a month later. Despite repeated documented efforts, the defendant was unable to obtain other work before the $550 balance was due. Bearden notified the probation office that his payment was going to be late. Subsequently, the state filed a petition to revoke Bearden's probation because he had not paid the $550 balance. At the hearing, evidence supported a conclusion that, despite bona fide efforts, Bearden had been unable to find employment and had no as-

sets or income. Nevertheless, the trial court revoked his probation.

In reversing the decision of the Georgia Court of Appeals, the United States Supreme Court made several important comments. The Court noted that, "[i]f the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection." *Bearden*, 461 U.S. at 668, 103 S.Ct. at 2070 (citations omitted). The rationale for this statement was expressed later in the opinion when the Court observed that, "a probationer's failure to make sufficient bona fide efforts to seek employment or borrow money in order to pay the fine or restitution may reflect an insufficient concern for paying the debt he owes to society for his crime." *Id.*

Read in its proper context, the *Bearden* decision merely requires the sentencing court in revocation proceedings for failure to pay a fine or other court-ordered payment to inquire into the reasons for the failure to pay. If the probationer failed to make sufficient bona fide efforts to legally acquire the resources to pay, the court may properly revoke probation.[6] Otherwise it may not.

Reading *Bearden* in its factual context supports the conclusion that the requirement of willfulness in the context of probation revocation proceedings for failure to pay a court-ordered payment merely requires a finding that the probationer did not make bona fide efforts to meet the conditions of his probation.[7]

---

6. We also note Justice White's concurring opinion in which Chief Justice Burger, Justice Powell and Justice Rehnquist join. Noting that, "[p]overty does not insulate those who break the law from punishment," Justice White stated:

> [w]hen probation is revoked for failure to pay a fine, [there is] nothing in the Constitution to prevent the trial court from revoking probation and imposing a term of imprisonment if revocation does not automatically result in the imposition of a long jail term and if the sentencing court makes a good-faith effort to impose a jail sentence that in terms of the State's sentencing objectives will be roughly equivalent to the fine and restitution that the defendant failed to pay.

*Bearden*, 461 U.S. at 675, 103 S.Ct. at 2074.

7. The trial court also found that appellant violated probation by not submitting his monthly reports by the fifth day of every month. Appellant does not dispute that he repeatedly failed to submit his monthly reports in a timely manner. Rather, appellant argues that by repeatedly accepting these reports late, the state waived its right to strict compliance with this condition of probation. We disagree.

Noting that a creditor's repeated acceptance of untimely payments waives the creditor's right to strict enforcement of contractual terms, appellant analogizes that APP's repeated acceptance of untimely monthly reports waives its right to strict enforcement of the probationary terms. We do not find the analogy persuasive. Furthermore, appellant cites no criminal case to

Reviewing the instant case in light of the teachings of *Bearden,* we find that the revocation of appellant's probation was justified. The trial court specifically found that appellant was gainfully employed for at least two months and yet did not make even a token payment toward the fine, the restitution, or the child support.[8] This failure to pay occurred despite the trial court's warning that appellant may be required to obtain a second and even third job to pay his debts. Appellant's actions are in sharp contrast to the defendant's actions in *Bearden* where he borrowed money to pay his debts and discontinued payment only after he was laid off from his job and, despite bona fide efforts, could not find another job. As noted by the trial court, appellant did not pay "[a]ny token amount of money to persuade the Court that [he] was mindful of [his] responsibility, and serious about discharging it." In fact, "[t]here has not been one nickel paid on that fine in nine months. Not a penny." Additional evidence of the appellant's lack of bona fide efforts to pay can be found in the fact that the court found "[t]here is a longstanding, historical refusal by the defendant to pay child support."

Appellant maintains that he was unable to make the payments because he could not find employment, and therefore should be protected by the language of *Bearden.* The circumstances in *Bearden,* however, are very different than those of the instant case. In *Bearden,* the defendant obtained full-time employment, but was subsequently laid off through no fault of his own. In contrast, appellant obtained full-time employment which he voluntarily gave up [9]

after apparently being accused of stealing someone's eyeglasses. Appellant knew that by quitting his job he ran the risk of having his probation revoked. Furthermore, the trial court specifically found that appellant had not made bona fide efforts to find full-time employment after he voluntarily quit his job and that there were jobs available during this period in Salt Lake City.

Our affirmance of appellant's probation revocation is consistent with recent decisions from other jurisdictions involving similar circumstances. *See, e.g., Smith v. United States,* 474 A.2d 1271 (D.C.1983) (per curiam) (affirming trial court's probation revocation based on appellant's failure to make monthly restitution payments); *Del Valle v. State,* 564 So.2d 607 (Fla.Dist. Ct.App.1990) (affirming trial court's probation revocation based on appellant's failure to file written monthly reports and failure to make good faith effort to pay restitution).

In sum, we conclude the state proved by a preponderance of the evidence that appellant willfully violated his probationary conditions by failing to pay his court-ordered fine, and failing to meet his child support obligations. Accordingly, we affirm the trial court's revocation of appellant's probation.

GREENWOOD and JACKSON, JJ., concur.

---

support his novel theory, but relies completely on civil contract cases.

Probation agreements are not governed solely by contract principles. Important public policy concerns mandate the rejection of appellant's position. The court imposes probation as a privilege, not a right, in order to attempt to rehabilitate defendants rather than merely punish them. APP is to enforce probationary conditions in order to enhance the purpose of probation. Were we to accept appellant's position, APP would be restricted from working with a probationer to attempt to ensure the successful completion of the probationary term. Under appellant's view, APP would have to require strict compliance with all probationary conditions, knowing that if it does not, it has waived

its right to enforce the agreement. This result is obviously not in the best interest of criminal defendants or the criminal justice system.

8. Appellant argues that he did in fact make "token" payments toward the child support by making monetary payments directly to his ex-wife, which she required before she allowed him to see their daughter. Appellant, however, offered no affidavit from his wife or independent verification for his claim and, therefore, the trial court in its findings specifically rejected his contention.

9. Appellant does not dispute the fact that he voluntarily left his job.