STATE of Utah, Plaintiff and Appellee,

v.

Fernando RUESGA, Defendant and Appellant.

No. 920426–CA.

Court of Appeals of Utah.

April 22, 1993.

Roger K. Scowcroft and Elizabeth Holbrook, Salt Lake City, for defendant and appellant.

Jan Graham and Christine F. Soltis, Salt Lake City, for plaintiff and appellee.

Before GARFF, GREENWOOD and ORME, JJ.

## OPINION

ORME, Judge:

Defendant appeals the revocation of his probation based on his unwillingness to sign a probation agreement. He argues that signing the agreement was not a condition of probation, that his failure to sign was not willful, and that he lacked the ability to understand the proceedings against him. He also contends that the trial court's findings supporting its decision are in error. We affirm.

## FACTS

On February 18, 1992, defendant pled guilty to one count of unlawful possession of a controlled substance, a third degree felony, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.1992). On April 6, 1992, after the Office of Adult Probation and Parole had evaluated defendant and recommended he be incarcerated, the trial court sentenced defendant to a prison term of zero to five years and imposed a $5,000 fine, but stayed the sentence pending completion of eighteen months probation. The court required defendant to spend six months in jail and to pay $1,500 of the fine plus a twenty-five percent surcharge. At sentencing, the court described the general conditions of probation, which included prohibitions against possessing controlled substances and drinking alcohol and directives to complete appropriate treatment programs, to establish a permanent address, and to work full time. On April 28, 1992, in response to an affidavit filed by defendant's parole officer alleging defendant refused to sign a standard probation agreement, the district court issued an Order to Show Cause why defendant's probation should not be revoked. Three hearings transpired subsequent to that order.

At the first hearing, on May 4, defendant, through counsel, denied the allegation that he refused to sign the probation agreement. However, due to a family emergency that had arisen for defense counsel, the court granted a two-week continuance for the hearing. Before concluding the proceedings, the court warned: "If Mr. Ruesga doesn't sign the probation agreement, he's going to prison. Simple as that."

When the second hearing commenced on May 18, defendant had not yet signed the probation agreement. On several occasions throughout the hearing, the court asked why the probation agreement had not been signed, and defense counsel reiterated defendant's willingness to sign. Yet, counsel never stated defendant would do so unconditionally, nor did defendant ever actually sign the agreement, although it was apparently available for his signature. Defense counsel stated that defendant was willing to sign the agreement *if* the court would strike the Order to Show Cause. However, from all that appears, even if defendant had admitted to the allegations in the affidavit, which was the basis for the Order to Show Cause, the judge and probation officer were still willing to proceed with probation, providing only that defendant sign the implementing agreement. In response to the court's inquiry as to the State's position in the case, defendant's probation officer stated that "[i]f he's willing to sign, we'll give him a try."

As the hearing continued, the court discovered that defendant had also threatened to go to Mexico when he was released from jail. Defense counsel never denied defendant's statement or intent to go to Mexico, but attempted to explain "[i]t's not his in-

tention to just leave Utah, Your Honor. He just wants to go to Mexico to see his parents." Upon hearing this, and having no signed probation agreement in hand, the court, apparently frustrated by defendant's recalcitrance, scheduled an evidentiary hearing for June 2.

At the June 2 hearing, defendant requested an interpreter who would translate English to Spanish for him. The court refused the request. Only defendant and his parole officer testified at the hearing. Defendant's parole officer recounted the April 16 incident at the jail when defendant refused to sign the agreement. She testified that when she attempted to explain the parole agreement the defendant became "extremely argumentative," contesting the $1,875 fine as incorrect [1] and claiming the agreement did not reflect what took place in court. According to the parole officer, defendant used profanities and vituperative epithets directed at the court to exclaim he did not have to do what the trial judge told him to do. Furthermore, she testified that defendant "stated he was going to go to Mexico."

Defendant testified that his lack of proficiency in English led to him misunderstanding the agreement. He further explained that he did not even know what probation was when his probation officer spoke to him, that he planned to go to Mexico only after he completed his probation obligation in Utah and not immediately upon release from jail, and that he was willing to do everything required to complete his probation, including signing the probation agreement.

After testimony and arguments concluded, and after the court orally explained the basis for its decision, the trial court terminated its offer to grant probation and committed the defendant to the Utah State Prison. Defendant objected to proposed

written findings submitted the next day by the State, but on June 9, 1992, the court signed those findings.

Defendant makes the following claims on appeal: (1) the court erred by revoking probation based on failure to sign the agreement and (2) the court's factual findings concerning the willfulness of the probation violation and the defendant's ability to understand English are clearly erroneous.

## STANDARD OF REVIEW

A determination to revoke probation is within the discretion of the trial court. We will reverse only if the evidence, when viewed in a light most favorable to the court's decision, is so deficient that it must be concluded the trial court abused its discretion. *State v. Jameson*, 800 P.2d 798, 804 (Utah 1990). Furthermore, the court's underlying factual findings supporting its conclusion that defendant violated probation will not be disturbed unless they are clearly erroneous. *State v. Martinez*, 811 P.2d 205, 209 (Utah App.1991).

## FAILURE TO SIGN AS PROBATION VIOLATION

Defendant's chief argument on appeal is that the trial court denied him due process by revoking probation based on his refusal to sign the probation agreement because the court had not explicitly stated during sentencing that signing the probation agreement was a condition of probation. While due process certainly requires conditions of probation to be clear enough so that defendant has notice as to what constitutes a probation violation, *see Douglas v. Buder*, 412 U.S. 430, 432, 93 S.Ct. 2199, 2200, 37 L.Ed.2d 52 (1973), defendant's position in this case is untenable.[2]

1. The $1,875 figure accurately reflected the trial court's reduction of defendant's fine from $5,000 to $1,500 plus the required twenty-five percent surcharge.

2. Although the trial court entered a judgment upon conviction whereby it placed the defendant on probation, arguably defendant did not begin probation until he entered into a written

probation agreement. Under Utah law, " '[p]robation' is an act of grace by the court suspending the imposition or execution of a convicted offender's sentence upon prescribed conditions." Utah Code Ann. § 77-27-1(10) (Supp. 1992). The defendant is free to accept the court's offer to spend time under probation or to decline the court's good grace and spend the

Even if, as defendant claims, he had no notice that signing the agreement was a condition of probation at the time of sentencing, the record of the first hearing on the Motion to Show Cause leaves no doubt that defendant was on such notice after May 4. As noted above, the court told defense counsel, with defendant at his side, that it would continue the hearing for two weeks, but "[i]f Mr. Ruesga doesn't sign the probation agreement, he's going to prison. Simple as that." Yet, the agreement remained unsigned two weeks later at the May 18 hearing. If anything, the trial court was abundantly generous in allowing defendant two weeks to sign a probation agreement, a simple act that would take but a moment.

Defendant asserts that despite the notice he received during the first hearing, the revocation was based solely on defendant's refusal to sign the agreement at the jail, not on his failure to sign after the court's explicit warning. It follows, he contends, that since the court did not tell him at sentencing that signing the agreement was a condition of probation, he could not have violated probation by refusing to sign the agreement at the jail on April 16. While it is not altogether clear that defendant's argument would prevail even if termination was based on the single refusal to sign at the jail, we believe the court's termination of probation was correctly based on defendant's refusal to sign the agreement at any time after the sentencing hearing, not just at the time of the jail incident. The agreement was not signed at the jail; it was not signed at the May 4 hearing; it was not signed in the subsequent two weeks; it was not signed at the May 18 hearing. While the court's findings, viewed in iso-

lation, appear to emphasize the jail episode, the court clearly had in mind this entire pattern of refusal in making its revocation decision.

## WILLFULNESS OF VIOLATION

■ Having concluded that signing the probation agreement was a condition of defendant's probation, which defendant violated, we turn to consider whether the court correctly concluded defendant violated that condition willfully. In order for a trial court to revoke probation based on a violation of probation under Utah Code Ann. § 77–18–1(10) (Supp.1992), it must determine by a preponderance of the evidence that the violation was "willful or, if not willful, must presently threaten the safety of society." *State v. Hodges*, 798 P.2d 270, 277 (Utah App.1990). In *State v. Archuleta*, 812 P.2d 80 (Utah App.1991), this court held that willfulness "merely requires a finding that the probationer did not make bona fide efforts to meet the conditions of his probation." *Id.* at 84. As applied to this case, the *Archuleta* rationale suggests that where defendant did not make a bona fide effort to cooperate with probation officials to initiate his probation, despite warning by the court, he willfully violated his probation. *Cf. State v. Hodges*, 798 P.2d 270, 275 (Utah App.1990) (probationer's inability to complete treatment program due to physiological problem was not willful violation because his efforts to participate were genuine). Defendant claims the trial court's findings do not support the conclusion that the violation was willful. We disagree.

■ The trial court entered ample oral and written findings to support its conclu-

entire sentence in prison. The written probation agreement, which details the conditions of probation, embodies a defendant's acceptance of probation and the prescribed conditions. Inasmuch as a defendant's refusal to sign a probation agreement manifests an unwillingness to accept the conditions of probation, in a sense probation never occurs where such unwillingness is demonstrated. If he in fact wanted to comply with the terms of his probation, the clearest manifestation of such would have been to sign the agreement. Defendant's reluctance to enter into probation is further evidenced by

his testimony at the June 2 hearing that, when asked to sign the agreement at the jail, "I did say that I would rather do all the time, and just get out of there without probation." By this sequence of events, defendant himself appears to have refused probation, which therefore never came into being. Seen in this light, there may have been no probation to revoke and it is far from clear that an evidentiary hearing was even required. *See* Utah Code Ann. § 77–18–1(10) (Supp.1992). Nonetheless, because this case is postured as a probation revocation proceeding, we will treat it as such.

sion that defendant willfully refused to sign the probation agreement and therefore violated probation. At the June 2 hearing, after considering testimony from both sides, the court explained in detail the basis for its decision. The court specifically found: (1) the probation officer's testimony was believable and credible, while the defendant's testimony was not; (2) defendant manifested an attitude that he could do what he wanted; (3) defendant's language suggested a refusal to cooperate and sign the agreement; and (4) defendant "knowingly and intelligently, and with purpose refused to cooperate with Adult Probation and Parole and sign the probation agreement." Notwithstanding that the oral findings alone sufficiently support the court's determination that defendant violated his probation, *see Hodges*, 798 P.2d at 274, the court subsequently signed written findings, which in essence were a summary of the oral findings.

The court's findings reveal "the evidence relied on and the trial court's reasons for revoking appellant's probation." *Id.* Contrary to defendant's contention that the findings are clearly erroneous, we believe they are amply supported and form a sound basis for the court's decision. The findings demonstrate that the court did not abuse its discretion in revoking defendant's probation.

## DEFENDANT'S ABILITY TO UNDERSTAND PROCEEDINGS

■ Defendant argues the court's additional finding that defendant could understand the proceedings is clearly erroneous. That finding reads:

3. That the defendant, while having a limited understanding of English, has an adequate command of the English language to fully understand the proceedings before this Court and the conditions of probation as presented by [his probation officer].

We believe the court's finding is fully supported by the record in this case. Defendant appeared at several proceedings in circuit court, including a preliminary hearing; an arraignment, at which he pled guilty; and two of the three hearings on the Motion to Show Cause—all without requesting a translator. Despite these appearances, defendant first asked for a translator at the beginning of the third hearing on June 2. The judge refused his request at that time. Defendant later read a written statement in English, which, by his own testimony, he prepared with only minimal assistance. He testified at the hearing with no apparent difficulty. After defense counsel referred to defendant's "difficulty understanding what he's supposed to do here," the following exchange occurred:

THE COURT: Are you telling me, Mr. Scowcroft, that with regard to your client's understanding that it's now your position that he doesn't understand the English language well enough to proceed in these proceedings?

MR. SCOWCROFT: I'm not saying that, Judge. We've not had an interpreter during these proceedings. There have been a number of appearances we've made in court.... I think his command of the English language is somewhat marginal, and I think his heavy accent is evidence of that. That's all I could say really in that regard.

The record largely speaks for itself. In light of defense counsel's agreement that defendant could understand English well enough to participate in the proceedings, we would certainly be reluctant to override the trial judge who reached the same conclusion after having had several opportunities to view and hear defendant. Accordingly, defendant's claim of error is without merit.

## CONCLUSION

Defendant's failure to sign the probation agreement was a willful violation of his probation. Moreover, the trial court's conclusion that defendant understood English well enough to participate in the third hearing without a translator was not clearly erroneous. Accordingly, we affirm the probation revocation.

GARFF and GREENWOOD, JJ., concur.