2013 UT App 102

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
*Plaintiff and Appellee,*
*v.*
HOYT BRADY,
*Defendant and Appellant.*

Memorandum Decision
No. 20110901-CA
Filed April 25, 2013

Third District, Salt Lake Department
The Honorable Denise P. Lindberg
No. 091907406

Debra M. Nelson, Scott A. Wilson, and
Noella A. Sudbury, Attorneys for Appellant
John E. Swallow, Brett J. DelPorto, and
Daryl L. Bell, Attorneys for Appellee

JUDGE JAMES Z. DAVIS authored this Memorandum Decision, in
which JUDGE GREGORY K. ORME concurred.
JUDGE WILLIAM A. THORNE JR. concurred, with opinion.

DAVIS, Judge:

¶1      Hoyt Brady appeals from the trial court's ruling revoking his
probation. We affirm.

¶2      After pleading guilty to one count of communications fraud
and one count of racketeering, both second degree felonies, *see*
Utah Code Ann. §§ 76-10-1603, -1801 (LexisNexis 2012), Brady was
placed on probation for thirty-six months. The conditions of his
probation included paying restitution of $479,123.13 to his victims.
On June 14, 2011, nearly one year after Brady entered his guilty
plea and was put on probation, the State filed a motion for an order

to show cause, arguing that Brady violated the terms of his probation by failing to pay "anything toward his restitution amounts." The trial court granted the motion, and held a hearing on September 9, 2011.

¶3    During the hearing, Brady admitted to violating his probation by failing to pay anything toward the restitution, but described his efforts to find a job and his overwhelming financial obligations in an effort to mitigate the impact of his violation. The trial court concluded that Brady's mitigating evidence failed to "show [that he had made] at least a good faith effort to address the restitution" and noted that there were "any number of things" he could have done to satisfy this requirement. Accordingly, the trial court revoked Brady's probation and reinstated his prison sentence. Brady appeals, arguing that the trial court abused its discretion by failing to consider his mitigating evidence, to explicitly find that his probation violation was willful, and to consider alternative means of punishment other than reinstating his prison sentence. Brady alternatively argues that the Order to Show Cause hearing did not comport with the minimum requirements of due process.

¶4    We review a trial court's decision to revoke probation for an abuse of discretion. *State v. Orr*, 2005 UT 92, ¶ 9, 127 P.3d 1213. "Probation may not be revoked except upon a hearing in court and a finding that the conditions of probation have been violated." Utah Code Ann. § 77-18-1(12)(a)(ii) (LexisNexis 2012). During a revocation proceeding, "[t]he defendant may call witnesses, appear and speak in the defendant's own behalf, and present evidence," as well as question witnesses presented by the prosecution. *Id.* § 77-18-1(12)(d)(iii)–(iv). "After the hearing the court shall make findings of fact," *id.* § 77-18-1(12)(e)(i), and if a violation is found, the trial court "must determine by a preponderance of the evidence that the violation was willful," *State v. Maestas*, 2000 UT App 22, ¶ 24, 997 P.2d 314 (citation and internal quotation marks omitted). "[T]he requirement of willfulness in the context of probation revocation proceedings for failure to pay a court-ordered payment

merely requires a finding that the probationer did not make bona fide efforts to meet the conditions of his probation." *State v. Archuleta*, 812 P.2d 80, 84 (Utah Ct. App. 1991). If the trial court determines that a probationer's violation was not willful, the trial court is then required to "consider 'whether adequate alternative methods of punishing the defendant are available.'" *Orr*, 2005 UT 92, ¶ 34 (quoting *Bearden v. Georgia*, 461 U.S. 660, 669 (1983)).

¶5    Here, Brady spoke in his own behalf at the hearing to explain that he had been searching for a job for eight to nine hours a day for almost ten months, that his age and the slow housing market—to say nothing of his recent felony convictions—were negatively impacting his search for residential construction work, and that he remained unable to pay restitution after he secured a full-time job in June 2011 because 75% of his earnings were being garnished to pay child support and another restitution obligation. Brady mentioned that he could get a second job and that his brother could lend him $200 a month to pay his restitution in the meantime, though he did not explain why the loan-for-restitution option had not been implemented months earlier.

¶6    The trial court acknowledged Brady's mitigating evidence, stating "that these are tough economic times," but was ultimately not convinced that Brady's efforts of the previous twelve months were sufficient "to show at least a good faith effort to address [his] restitution." Specifically, the trial court noted that Brady "could have done any number of other things to demonstrate some effort," including finding a second job even if it was just doing handyman work or odd jobs, which in Brady's circumstance, seems a fair consideration inasmuch as Brady was doing handyman work before he was arrested and, according to a handwritten letter that he sent to the trial court, planned on returning to handyman work, if granted probation. *But see Bearden*, 461 U.S. at 673 (rejecting the sentencing court's comments on the availability of odd jobs as evidence of willfulness where the sentencing court made no finding that the probationer had not made bona fide efforts to find work).

¶7    These comments by the trial court illustrate its implicit finding of willfulness. Brady argues that an explicit finding is mandatory. We disagree.[1] *Cf. Orr,* 2005 UT 92, ¶ 37 (applying the analytical framework used in probation revocation proceedings to a probation extension proceeding, and upholding the trial court's *implicit* finding of willfulness contained in its order); *State v. Brooks,* 2012 UT App 34, ¶ 15 & n.5, 271 P.3d 831 (describing comments made by the trial court during sentencing as an "implicit finding of willful behavior" and acknowledging that this implicit finding was sufficient to satisfy the willfulness finding). Additionally, the trial court could have based a willfulness finding on Brady's comment that his brother was willing to make payments on his behalf while he looked for a second job; this comment implies that Brady could have *already* been looking for a second job and already paying restitution with his brother's offered money. *See Orr,* 2005 UT 92, ¶ 34 (categorizing a probationer's failure to make bona fide efforts to seek employment or borrow money as willful acts). Further, as the State pointed out at the hearing, Brady could have been paying token amounts—"cents"—toward his restitution. *See Archuleta,* 812 P.2d at 85 (describing the failure to make token payments toward restitution as a willful violation of probation). Thus, the trial court's implicit determination that Brady's violation was willful was not an abuse of discretion, and because of this finding, the trial court was not required to consider alternative punishments before reinstating Brady's prison sentence.

¶8    Alternatively, Brady argues that the hearing did not comport with the minimum requirements of due process.

---

1. We also reject Brady's argument that the trial court failed to make adequate findings of fact. Under the facts and circumstances of this case, the "transcribed oral finding[s]" of the trial court satisfied the requirement that the trial court make findings of fact because the transcript of the hearing sufficiently "enable[d] the reviewing court to determine the basis of the district court's decision." *See State v. Orr,* 2005 UT 92, ¶ 31, 127 P.3d 1213.

Specifically, Brady argues that he was not afforded a full opportunity to be heard.[2]

¶9      "[P]robation revocation proceedings, which are not criminal in nature and involve only a conditional liberty interest, are entitled only to the minimum requirements of due process." *State v. Orr*, 2005 UT 92, ¶ 12, 127 P.3d 1213 (footnote, citation, and internal quotation marks omitted); *see also id.* ¶¶ 11, 13–14 (recognizing that "[w]hat constitutes due process . . . depends upon the type of proceeding and, more specifically, the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between legislative means and purpose, [and] the existence of alternative means for effectuating the purpose," and listing what the minimum requirements of due process may entail in any given situation (second alteration in original) (citation and internal quotation marks omitted)). The Utah Code requires the trial court to hold a hearing before a defendant's probation can be revoked and to permit a defendant to speak in his own behalf and present evidence during the hearing. Utah Code Ann. § 77-18-1(12)(a)(i)–(ii), (d)(iv) (LexisNexis 2012); *see also id.* § 77-18-1(12)(a)(i) (noting that a defendant can waive his right to a hearing). The statute states that probation can be revoked if, after conducting a hearing, the trial court "find[s] that the defendant violated the conditions of probation." *Id.* § 77-18-1(12)(e)(ii).

¶10      Here, Brady was permitted to speak in his own behalf during the hearing. During the hearing, Brady also offered the court evidence in support of his justifications for violating his probation—a log book in which he recorded the details of his job search and pay stubs to prove that 75% of his wages were already being garnished. As previously determined, the trial court did

---

2. Because of our determinations above that the trial court's oral findings were adequate and that the evidence was sufficient to support the trial court's revocation, we need not address Brady's similar challenges to the findings raised within the alternative argument he presents on appeal. *See supra* ¶ 7 note 1.

consider Brady's mitigating evidence, although it did not view the log book or pay stubs and expressed impatience at Brady's attempt to offer the log book as evidence. Nonetheless, we fail to see how this amounted to a violation of Brady's due process rights, especially where he admitted to violating his probation and the trial court considered his mitigating testimony. *See id.* § 77-18-1(12)(d); *see also Bearden v. Georgia*, 461 U.S. 660, 672 (1983) ("[I]n revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay."). Further, the two items of evidence that Brady described do little more than bolster the credibility of the statements that he made in his own behalf, and even when viewing all of that evidence as true, it does not address the grounds on which the trial court ultimately revoked his probation—failure to make even token restitution payments. After the trial court expressed its impatience, Brady offered to get a second job and to start paying restitution with money borrowed from his brother. However, these statements work against Brady as much as they mitigate in his favor because they illustrate additional actions Brady could have taken to enable him to make at least token restitution payments in the year leading up to the State's Motion for an Order to Show Cause. Even excusing Brady's having not found (or perhaps even started looking for) a second job due to factors beyond his control—i.e., his age and the difficult job market—Brady offered no reason at the hearing explaining why he did not obtain a loan from his brother sooner, and indeed, he suggested the loan option only after the trial court appeared to become frustrated with him. For all of these reasons, we reject Brady's argument that the hearing did not comport with the minimum requirements of due process and affirm the trial court's revocation of his probation.

────────────

THORNE, Judge (concurring):

¶11    I concur with the majority opinion, as I agree that Brady willfully failed to make restitution payments as required by the terms of his probation. However, I write separately because I

believe that there should be a separate legal framework for evaluating probation violations when the sole purpose of granting probation was to benefit the victims by enabling the offender an opportunity to make restitution payments. In such circumstances, it would be entirely appropriate for a sentencing judge to impose a strict liability standard on an offender's restitution payments, requiring the offender to essentially waive all due process and liberty interests related to those payments as a condition of probation.

¶12    Had such a sentence been imposed on Brady in this case, the trial court would not have needed to concern itself with whether Brady's failure to pay was willful, reasonable, or anything else. Instead, the trial court could simply have revoked Brady's probation for failure to pay restitution as ordered and as agreed to by Brady. I see no constitutional problem with such an approach under existing case law, but if such a problem exists, I would urge a reevaluation of the standards governing probation violations to allow for such an approach in appropriate cases.

¶13    My concern arises from situations similar to Brady's involving frauds in which a serious crime has been committed, and the perpetrator has pled guilty to or been convicted of a felony offense warranting a lengthy prison sentence. The sentencing judge may well look at the severity of the crime committed, the defendant's criminal history, and other relevant factors and conclude that the most appropriate sentence is to commit the defendant to prison. However, it is not uncommon in these situations for the victims to argue for probation instead of imprisonment when the defendant "promises" that he is able to make restitution if he is simply given a chance. In those situations victims often plead passionately in favor of probation for the defendant on the grounds that restitution payments will occur only if the defendant is not imprisoned. It is often difficult for the sentencing judge to ignore these pleas, particularly when the victims may have lost their entire life savings in the defendant's fraud scheme. And the defendant—who has already demonstrated

an ability to persuade others to part with their money—has every interest in representing to the victims and the court that all will be made right if only the court orders probation instead of imprisonment.

¶14 These circumstances present the sentencing judge with a difficult dilemma, particularly if the judge does not believe that adequate—or, for that matter, any—restitution will really be forthcoming. It is against this backdrop that I propose an exception to the general rule that "[t]he fundamental fairness requirement of the Fourteenth Amendment forbids the revocation of probation when a probationer has failed to pay restitution or a fine through no fault of his own." *State v. Orr*, 2005 UT 92, ¶ 33, 127 P.3d 1213 (citing *Bearden v. Georgia*, 461 U.S. 660, 668 (1983)). This "special terms probation" would allow a judge who may ordinarily find that the probability of any meaningful restitution is too low and that justice is best served by imprisonment to grant probation based on a defendant's questionable promise of repayment.

¶15 The normal rule, originating in *Bearden v. Georgia*, 461 U.S. 660 (1983), requires that a failure to pay court-ordered restitution must ordinarily be willful in order to support the revocation of probation. *See id.* at 668. However, *Bearden* presupposed that probation is imposed as "the appropriate and adequate penalty for the crime," *id.* at 667, and that "[t]he decision to place the defendant on probation . . . reflects a determination by the sentencing court that the State's penological interests do not require imprisonment," *id.* at 670. This is not the case where, as I have described, a court believes that imprisonment *is* the appropriate punishment but grants probation solely for the purpose of allowing a chance of restitution to the victims.

¶16 So long as the sentencing judge makes this clear to a defendant at the time of the initial sentence, along with the

announcement of a zero-tolerance policy for nonpayment,[3] I see no violation of the principles announced in *Bearden* when probation is subsequently revoked based on a bare finding of nonpayment. To the contrary, *Bearden* expressly allows for the revocation of probation without a finding of willful nonpayment upon a "determin[ation] that alternatives to imprisonment are not adequate in a particular situation to meet the State's interest in punishment and deterrence." *Id.* at 672. In the situation I have described, the sentencing court would make the determination that imprisonment is required to vindicate the State's interests at the time that sentence is imposed. Nevertheless, the court would stay the imposition of imprisonment for the benefit of third parties, i.e., the victims of the defendant's fraudulent acts.[4]

¶17    A sentencing court's decision to impose probation for the sole purpose of allowing restitution payments defers the State's interest in punishment and deterrence indefinitely in favor of the victims' interests in obtaining compensation for their losses.[5] When the victims' interests are not being met due to the defendant's nonpayment of restitution as ordered, the only reason to continue

---

3. The transcript of Brady's sentencing hearing is not a part of the record on appeal, but under the circumstances it would not surprise me if the sentencing judge made comments substantially expressing these concepts to Brady. However, in light of the record's silence on this matter, I agree with the majority opinion that a finding of willfulness was required in this case.

4. I note that the concept of victims' rights has developed substantially in the thirty years since *Bearden v. Georgia*, 461 U.S. 660 (1983). *See, e.g.*, Utah Const. art. I, § 28 ("Declaration of the rights of crime victims") (adopted at election Nov. 8, 1994).

5. Of course, additional probation requirements may be imposed that relate to ordinary correctional concerns. Defendants accused of violations of those terms would receive the normal due process protections already in the law related to probation revocations.

to defer the imprisonment that the crime demands evaporates, and this is true regardless of the reason for the nonpayment. As a practical matter, some defendants may then be imprisoned despite their best efforts at obtaining the funds to pay restitution. However, "[u]ltimately, it must be remembered that the sentence was not imposed for a circumstance beyond the probationer's control 'but because he had committed a crime.'" *Id.* at 668 n.9 (citation omitted).

¶18    For these reasons, I believe that *Bearden* allows for the revocation of probation without a finding of willful nonpayment of restitution under the circumstances I have described. To the extent that *Bearden* does not allow for such a result, I would urge its reconsideration to create such an exception in these circumstances. Nevertheless, as to Brady, I agree with the majority that he willfully failed to make restitution payments as ordered. Accordingly, I concur in the majority opinion.

———————