

IN THE

# Court of Appeals of Indiana

Vincent J. Weaver,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Jun 30 2025, 9:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

June 30, 2025

Court of Appeals Case No.
24A-CR-3165

Appeal from the Allen Superior Court

The Honorable Frances C. Gull, Judge
The Honorable Samuel R. Keirns, Magistrate

Trial Court Cause Nos.
02D05-2107-F5-273
02D05-2111-F6-1437

**Opinion by Judge Weissmann**
Judges Bailey and Brown concur.

**Weissmann, Judge.**

[1]    While on probation for four felony convictions, Vincent Weaver violated a rule of his community corrections placement by threatening to kill or severely beat the mother of some of his children. As a result, the trial court revoked Weaver's probation. Weaver appeals, claiming the revocation was improper because his threats were not unlawful. Finding no error, we affirm.

## Facts

[2]    On July 2, 2021, Weaver fired a handgun seven times into a crowded Fort Wayne bar before fleeing the scene. Police arrested Weaver a few days later and found him in possession of both a handgun and 128.5 grams of marijuana. For all this, the State charged Weaver in case number 02D05-2107-F5-273 (Case 273) with Level 5 felony criminal recklessness, Level 5 felony carrying a handgun without a license, and Level 6 felony possession of marijuana.

[3]    While out of jail and awaiting trial in Case 273, police found Weaver in possession of 177 grams of marijuana. For this, the State charged Weaver in case number 02D05-2111-F6-1437 (Case 1437) with Level 6 felony possession of marijuana. Weaver pleaded guilty to the possession charge in Case 1437, and the trial court sentenced him to 1 year in prison, all suspended to probation, to be served consecutively to any sentence imposed in Case 273. Weaver later

pleaded guilty as charged in Case 273 and was sentenced to a total of 10 years in prison with 6 years suspended to probation.

[4] As a condition of his probation in both cases, Weaver agreed to maintain good behavior. He also agreed to spend the first year of his probation in Case 273 under "Community Control." App. Vol. II, p. 149. To accomplish the latter, Weaver was eventually enrolled in the Allen Superior ReEntry Court program and placed in a residential facility under the supervision of Allen County Community Corrections (ACCC). As part of his enrollment in the ReEntry Court program, Weaver agreed in writing to abide by the rules set forth in his residential facility's handbook. Rule 2 of that handbook stated, in pertinent part: "I will not threaten or intimidate anyone while under [ACCC] supervision." Tr. p. 25.

[5] On October 26, 2024, Weaver made a telephone call from his residential facility to Kelsy Brown, the mother of one of Weaver's children. During this recorded call, Weaver made threats to Brown about Denasia Boleheimer, the mother of Weaver's other children. The pertinent portion of Weaver and Brown's phone conversation was as follows:

> WEAVER: I ain't been to sleep. I been thinking about beating [Boleheimer] up.
>
> BROWN: Ha, why?
>
> WEAVER: Naw, cuz' she got me in here. So when I get off house arrest, and I walk to my grandma's, Imma wait till she comes in the door, Imma just beat her. Imma beat the dog sh\*\* out of her.

BROWN: [Inaudible] don't say that.

WEAVER: No, I'm dead-a** serious.

BROWN: [inaudible].

WEAVER: I'm between killing her and beating her up.

BROWN: [Inaudible] I'm sorry. I'm really sorry.

WEAVER: No your not.

BROWN: I know it hurts.

WEAVER: What hurts? Nothin' hurts.

BROWN: That you're in there and she did that to you. Dude, that's not ok. I get it.

WEAVER: You did the same thing. So when you say that, it doesn't make no sense when you say that.

BROWN: But I dropped my stuff.

WEAVER: Mm, she did too.

BROWN: Then, why are you still in there?

WEAVER: Cuz' I have a probation violation.

BROWN: [Inaudible] I didn't know all that.

WEAVER: I'm just gonna knock her out. I just want to beat her up. So I'm gonna play the system. And I'm either gonna kill her or I'm gonna beat her up. I might just… If I didn't have another baby on the way, I probably would kill her.

BROWN: Oh my goodness! Why did your blood pressure rise early this morning? It's 5 o'clock.

WEAVER: No, I can't sleep 'cause that what I be thinking about doing.

BROWN: I know.

WEAVER: You be thinking I be joking.

BROWN: I know you're not joking.

WEAVER: But Imma probably just beat the dog sh** out of her.
And after that I'll be all right.

BROWN: Oh goodness.

WEAVER: I know where she lives.

Ex. 1 (2:55-4:48).

[6] Alarmed by Weaver's threats, Brown reported them to ACCC. The State then filed petitions to revoke Weaver's probation in both Case 273 and Case 1437. The petitions specifically alleged that Weaver "[d]id not maintain good behavior" by making "violent threats towards another individual while on a recorded line at Allen County Residential Facility." App. Vol. II, p. 224; App. Vol. III, p. 113.

[7] At a joint hearing on both petitions, the State played the recording of Weaver's telephone call with Brown. The State also presented evidence of Rule 2 of Weaver's residential facility handbook. Weaver admitted to making the statements heard on the recording and confirmed that they were in reference to Boleheimer. But Weaver claimed he was just venting frustration.

[8] Unmoved by Weaver's explanation, the trial court found that Weaver threatened Boleheimer in violation of Rule 2 of Weaver's residential facility handbook. The court therefore revoked Weaver's probation for failing to

maintain good behavior as required by his probation conditions and ordered him to serve in prison the previously-suspended portions of his sentences in Case 273 and Case 1437. App. Vol. III, p. 93. Weaver appeals.

## Discussion and Decision

[9] "Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). Accordingly, we review a trial court's determination that a defendant violated their probation under an abuse of discretion standard. *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013). "An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances, or when the trial court misinterprets the law." *Id.* (internal citation omitted).

[10] Weaver argues that the trial court abused its discretion in finding that he failed to maintain good behavior. Citing *Justice v. State*, 550 N.E.2d 809, 810 (Ind. Ct. App. 1990), Weaver claims such a finding required evidence of unlawful conduct. He then contends that the threats he made during his call with Brown were not unlawful because they did not amount to the crime of intimidation. *See generally* Ind. Code § 35-45-2-1(a) ("A person who communicates a threat with [criminal] intent . . . commits intimidation, a Class A misdemeanor."); *Ajabu v. State*, 677 N.E.2d 1035, 1043 (Ind. Ct. App. 1997) (ruling a threat is "communicated" under the intimidation statute if the person making it "knew or had good reason to believe" the threat would reach the victim thereof).

[11] The premise of Weaver's argument, however, does not apply to his case. In *Justice*, this Court indeed stated: "In proving that a defendant has violated the condition of 'good behavior,' the State must prove by a preponderance of the evidence that the defendant has engaged in unlawful activity." 550 N.E.2d at 810. But the bad behavior alleged in *Justice* was the defendant's purported commission of unlawful activity. *Id.* at 812 (affirming revocation for good behavior violation based on evidence of unlawful conduct for which criminal charges were dismissed). Weaver's case presents a different scenario.

[12] The State did not allege that Weaver engaged in bad behavior by committing the crime of intimidation. The State claimed Weaver engaged in bad behavior by violating Rule 2 of his residential facility's handbook. That rule stated: "I will not threaten or intimidate anyone while under [ACCC] supervision." Tr. p. 25. The plain language of the rule does not require the probationer be charged with the crime of intimidation. Nor does the rule condition its violation on threats being communicated to any particular person—it simply prohibits threats.

[13] A preponderance of the evidence shows that Weaver made threats to Brown about Boleheimer. On the recording of Weaver and Brown's phone call, Weaver stated that he was going to "beat the dog sh** out of [Boleheimer]," "knock her out," "beat her up," and possibly "kill her." *Supra* ¶ 5. Weaver also clarified that he was "dead-a** serious." *Id.* And Brown confirmed that she knew Weaver was "not joking." *Id.* In fact, Brown found Weaver's threats credible enough to report them to ACCC.

[14]    By violating Rule 2 of his residential facility's handbook, Weaver failed to maintain good behavior. Thus, the trial court did not abuse its discretion in finding Weaver violated his probation.

[15]    Affirmed.

Bailey, J., and Brown, J., concur.

ATTORNEY FOR APPELLANT

Sean M. Surrisi
Wyland, Humphrey, Clevenger & Surrisi, LLP
Plymouth, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Daniel H. Frohman
Deputy Attorney General
Indianapolis, Indiana